**SELMONT IMPROVEMENT ASSOCIATION et al., Plaintiffs,**

v.

**DALLAS COUNTY COMMISSION et al., Defendants.**

Civ. A. No. 6752-71-P.

United States District Court,
S. D. Alabama, N. D.

Feb. 18, 1972.

4. Id., Exhibit 2.

5. 28 U.S.C. § 753(b).

Levin & Dees, Montgomery, Ala., for plaintiffs.

W. McLean Pitts, Thomas G. Gayle, Selma, Ala., for defendants.

## OPINION AND ORDER

PITTMAN, Chief Judge.

The suit was commenced June 30, 1971, as a class action brought by the Selmont Improvement Association and 15 named black plaintiffs on behalf of other black families in West Selmont against the Dallas County Commission and its Commissioners. West Selmont is an unincorporated residential area of Dallas County, Alabama. Plaintiffs alleged that a white residential area of Selmont had been paved at County expense, but the County refused or failed to pave Negro residential areas. Jurisdiction was invoked under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C.A. § 1983, 28 U.S.C.A. § 1331(a), and 28 U.S.C.A. § 1343(3), (4).

On November 22 and 23, 1971, evidence was taken on the merits in the United States District Court, Southern District of Alabama, at Mobile, Alabama, with attorneys for all parties being present.

The offer of evidence included witnesses, interrogatories, and exhibits.

## FINDINGS OF FACT

The Dallas County Commission, as governing body of the County, has original and unlimited jurisdiction and powers with respect to the construction, maintenance and improvements of public roads. Code of Alabama (Recomp. 1958) Title 23, Section 43 and Title 12, Section 11. Acting pursuant to this authority, the present commission, consisting of four commissioners each representing a district, operates under what is known as "the unit system" with respect to road construction and paving projects. Under the unit system the four (4) districts are treated as one unit, and the commission attempts to equalize road construction and improvement among the four (4) districts on a mileage basis.

In addition to road construction and maintenance, the Dallas County Commission also provides other services to its inhabitants, including the following: Food Stamp Program; Health Department; Library; Boy Scouts; Y.M.C.A.; Good Samaritan Hospital; law enforcement.

There is no claim by the plaintiffs that the defendants have discriminated against the plaintiffs in providing any of the services rendered by the County.

The area known as Selmont is a loosely knit, unincorporated community in Dallas County, within the police jurisdiction of the City of Selma, Alabama, just south of Selma and across the Alabama River. It consists of four primary residential areas, one in the northwest section, one in the southwest section, one in the northeast section, and one in the southeast section. The northeast and the southeast areas are separated from the northwest and southwest areas by new U. S. Highway No. 80. The northeast area lies east of, and adjacent to, the old U. S. Highway 80 (Old Montgomery Road), and the southeast area is situated west of old U. S. Highway 80 (Old Montgomery Road). The residential area in the northeast section is composed of predominately white residents. The remaining residential areas are all predominantly black and were es-

tablished prior to 1954. There are presently approximately 3.1 miles of paved streets in the white northeast section and approximately 12.5 miles of unpaved streets in the three black areas of which 8.5 miles were in established black residential areas in 1954.

The streets in the northeast white section were paved in the year 1954 by the Dallas County Commission, then known as the Court of County Revenues of Dallas County, after the white residents petitioned the Court of County Revenues for paving. The paving was done at no cost to the property owners, although before the County agreed to the paving it required the affected property owners to convey sufficient right-of-way in order to afford a forty (40) foot right-of-way on all streets paved, and also required the property owners to release the County from any damages resulting from flooding.[1] The only paved street in the black areas of Selmont is a street leading from new U. S. Highway 80 east to Tipton School, approximately 1.5 miles. This street was paved by the present commission.

None of the present members or Chairman of the Dallas County Commission were members or Chairman of the Court of County Revenues in 1954. The Dallas County Commission has engaged in no subdivision paving projects, in either black or white subdivisions within the County, since 1954.

On February 7, 1955, the Court of County Revenues adopted a Resolution by which all maps of proposed subdivisions within the police jurisdiction of the City of Selma had to first be approved by the City of Selma Planning Commission and said Resolution[2] did contain the following provisions:

1. That the County will take over and maintain as public highways ONLY such streets, roads and public ways in such sub-divisions as are le-gally platted, at the expense of the developers, and approved by the Selma City Planning Commission.

\*　　\*　　\*　　\*　　\*　　\*

3. That a written application for acceptance of the streets, roads and public ways of each subdivision shall be made to the County, by the adjoining property owners or developers, and said application shall be accompanied by plans showing the layout, contours, profiles and grades of all streets, roads and public ways, typical sections, drainage, surfacing and location of all utilities. Said application shall be considered at length by the Court of County Revenues and its decision shall be spread upon its minutes.

By Resolution dated July 11, 1966, the above provisions were extended to include subdivisions in the County outside the police jurisdiction of the City of Selma.[3]

In August of 1970, the plaintiffs contacted W. J. Neighbors, the Commissioner whose district includes the Selmont area, and advised him that the black residents of Selmont wished to present the Dallas County Commission with a Petition to pave the streets in the black sections of Selmont. Commissioner Neighbors carried the Petition, signed by some four hundred (400) residents of black Selmont, before the entire Commission. No action was taken by the Commission on the Petition, but it was filed and recorded in the Minutes of the Commission. The Commission treated the Petition in the same manner as similar Petitions presented at approximately the same time by residents of white subdivisions in other parts of the County requesting street paving. The Commission agreed to determine at some future time whether or not it would accept streets in subdivisions for paving. None of the plaintiffs personally appeared before the Dallas County Commission.

---

1. Defendants' Exhibit #19, attached as Appendix A.

2. Defendants' Exhibit #16, attached as Appendix B.

3. Defendants' Exhibit #15, attached as Appendix C.

For the past four years the City of Selma has been engaged in a street paving program within its corporate limits. The Dallas County Commission has contributed the sum of $50,000.00 for each of these four years to the City of Selma with the understanding that the City would utilize these County funds for street paving in predominately black areas within the City of Selma. Under this program approximately twenty-five miles of streets were paved in predominately black areas of Selma.

This has been a city and county cooperative funding, not uncommon, for city paving. The relief of lack of paving in black areas of the city does not discharge the county defendants from their duties in the county required of them under the Equal Protection Clause of the Fourteenth Amendment.

The State of Alabama is presently in the process of acquiring rights-of-way for a by-pass around the City of Selma which will pass through this southeast area. This by-pass, when constructed, will eliminate portions of Main Street, North Street, 20 Foot Avenue, and South Street, respectively, and will materially affect other streets in that area.

The width of the paved streets in the white residential area varies from 16 to 18 feet. The unpaved streets in the Negro areas vary in width from 16 to 25 feet. It would not be more difficult to pave the Negro streets than it was to pave the white streets.

It would be necessary to move gravel onto the Negro dirt roads prior to paving. Gravel was present on the white streets before paving was begun, but Dallas County had originally placed the gravel on the white streets prior to the County's paving project.

The rights-of-way in the Negro areas vary from 20 to 50 feet. Most are 40 feet or more. Plaintiffs have offered to give the necessary right-of-way to the defendants where essential to provide adequate drainage.

Plaintiffs' expert engineer testified that every unpaved Negro street in Selmont will yield a right-of-way of 40 feet.

All four residential areas of Selmont, including the paved white areas, are subject to occasional flooding. To remedy this flooding the U. S. Corps of Engineers began plans in 1960 (final design 1967) for a series of dikes and canals which widely skirt the Selmont residential areas, and in no way require the moving of any houses or streets. These dikes are designed to keep the flood waters out of the Selmont area.

Two canals inside the proposed dikes will catch rain water draining from the Selmont residential areas and move this water to a low lying pond area (away from the residential areas) to be pumped over the dike into the river.

These proposed canals will be built through the low, uninhabited areas of Selmont. The canals will depend upon the natural flow of water for drainage. The use of natural flow is the common practice in determining canal location, and even though the canals might be slightly repositioned during construction, the natural flow concept would still be employed. It is expected the canals will remain just about where the present proposal shows them, and that there will be no grading or changing of any land in or adjacent to the residential areas in order to affect the flow of water.

Expert testimony indicated the paving of roads in the Negro residential areas of Selmont would have no effect whatsoever on the proposed Corps plans and all the County need do is insure that the natural flow of water is unimpeded. This must be done regardless of whether or not canals or dikes are ever built.

The proposal has not been submitted to Congress, and no funds have been appropriated. The plan may never be approved.

The elevation of the black residential areas is not substantially different from the elevation in the paved white residential area.

Since 1954 several County roads have been paved which serve Negro homes and communities. Almost all of these roads are called "farm to market" roads, constructed with a combination of county, state, and federal funds. These roads service white as well Negro rural homes, acting principally as conduits for large white farms to get their goods to market. None were characterized as residential communities comparable with those located in the Selmont area.

The court finds that since the adoption of the foregoing resolutions by the Dallas County Commission in 1955 and 1966, no discrimination has been shown in the application of these resolutions with reference to subdivisions. However, to hold that these resolutions are a defense to the present suit would permit the resolutions to freeze in past discriminatory actions against these plaintiffs in violation of their rights under the Fourteenth Amendment. This the court refuses to do.

The three black areas of West Selmont, which are the subject matter of this litigation, have increased in size and density since 1954. Two of the black areas, the ones west of U. S. Highway 80, are shown as they existed in 1954 by the green outlines on Defendants' Exhibits Nos. 22 and 23.[4] There will be substantial changes in the black area east of U. S. Highway 80 due to the new Selma bypass, a combination highway and bridge which runs from U. S. Highway 80 through the western portion of this black area.[5]

## CONCLUSIONS OF LAW

The court has jurisdiction of the subject matter in this cause and the parties hereto by reason of the provision of the Fourteenth Amendment to the United States Constitution and the provisions of Title 42 U.S.C.A. § 1983. Hawkins v. Town of Shaw, 437 F.2d 1286 (5th Cir. 1971); Franklin v. City of Marks, 439 F.2d 665 (5th Cir. 1971).

The court is of the opinion that the plaintiffs have clearly made out a prima facie case of racial discrimination. In such an instance, the court in *Hawkins, supra,* 437 F.2d at 1288, stated:

. . . this Court and the Supreme Court have held: "Where racial classifications are involved, the Equal Protection and Due Process Clauses of the Fourteenth Amendment 'command a more stringent standard' in reviewing discretionary acts of state or local officers. Jackson v. Godwin, 400 F.2d 529, 537 (5th Cir. 1968)" In applying this test, defendants' actions may be justified only if they show a compelling state interest. Loving v. Va., 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). We . . . conclude that no such compelling interests could possibly justify the gross disparities in services between black and white areas of town that this record reveals.

This court holds, likewise, that there is no such compelling interest to justify the disparities in the paving of the white and black areas of Selmont.

The *Hawkins* case was more complex and involved multiple services rather than one as in this case, to wit, street paving, but the defenses raised in Hawkins were similar to the defenses presented in this case and the court finds them to be without merit.

The evidence indicates that the construction of the proposed dikes and canals will not substantially adversely affect the paving.

## JUDGMENT AND ORDER

It is therefore the order, judgment, and decree of this court that:

1. The defendant Dallas County Commission and the individual members thereof, in their official capacities, their successors in office, their agents, employees, and those acting in concert with them, be and each hereby is enjoined from failing to plan, appropriate funds, and

---

4. See Defendants' Exhibits Nos. 22 and 23.

5. Ibid. Defendants' Exhibit #22.

construct paved streets in the black residential areas of Selmont, Alabama, as enumerated below and as shown in Defendants' Exhibits Nos. 22 and 23, together with Plaintiffs' Exhibits Nos. 1 and 2:

   (1) Second Avenue, South, from U. S. Highway 80 to Idaho Street

   (2) Center Street

     (Located on the west side of U. S. Highway 80 in the northernmost black residential area.)

   (3) Third Avenue, South, from U. S. Highway 80 to Idaho Street,

   (4) Hood Street, from U. S. Highway 80 to Idaho Street,

All as shown within the green lines on Defendants' Exhibit No. 22 construed with Plaintiffs' Exhibits Nos. 1 and 2.

   (5) Churchill Avenue,

   (6) Market Street, from Churchill Avenue to Roosevelt Avenue,

   (7) High Street, from Churchill Avenue to Roosevelt Avenue,

   (8) Atlee Avenue,

   (9) Marshall Avenue, from West Street to Eisenhower Street,

   (10) West Avenue,

   (11) Eisenhower Street, from Marshall Avenue to Center Street

   (12) Center Street,

     (Located on the west side of U. S. Highway 80 in the southernmost black residential area.)

   (13) Roosevelt Avenue,

     (That portion which lies west of U. S. Highway 80 in the southernmost black residential neighborhood and which remains unpaved, to Tipton School.)

All as shown within the green lines on Defendants' Exhibit No. 23 construed with Plaintiffs' Exhibits Nos. 1 and 2.

   (14) Main Street

     (That portion unaffected by construction of the new Selma bypass upon which residential homes remain and are not scheduled for condemnation.)

   (15) 20 Foot Avenue

     (That portion unaffected by construction of the new Selma bypass upon which residential homes remain and are not scheduled for condemnation.)

   (16) South Avenue

     (That portion unaffected by construction of the new Selma bypass upon which residential homes remain and are not scheduled for condemnation.)

   (17) North Avenue

     (That portion unaffected by construction of the new Selma bypass upon which residential homes remain and are not scheduled for condemnation.)

   (18) Henry Street, from Old Montgomery Road to South Avenue.

   (19) Roosevelt Avenue

     (That portion east of U. S. Highway 80 in the southernmost black residential neighborhood.)

All as shown on Defendants' Exhibit No. 22.

2. The paving is to be constructed so as to conform with good engineering practice.

3. Defendants are to immediately initiate the preliminary survey and engineering details necessary to lay the groundwork for paving of the above stated streets in the black residential areas of Selmont over a period of two (2) years from this date, one-half of the work to be completed within one (1) year from this date, and the other one-half to be completed within two (2) years from this date.

4. The defendants are to appropriate funds for the 1972–73 budget year for the purpose of planning and constructing one-half of the paved streets as hereinabove set out, in the black residential areas of Selmont, and they are to appropriate funds for their 1973–74 budget year for the purpose of constructing the other one-half of the paved streets in the black residential areas of Selmont. These funds are to be earmarked from funds

available at the respective times and are not to be used for any other purpose. Upon the planning, earmarking of funds, and construction being performed in accordance with established reasonable construction completion dates, and in accordance with the other provisions of this decree, the agreements heretofore entered into in this cause on the 31st day of August, 1971, are to be set aside and held for naught.

5. Before a street is paved, the adjacent property owners of the several streets hereinabove enumerated are to present to the defendants executed agreements which will give sufficient land to guarantee a 40 foot right-of-way and agreements releasing the County from liability as to water damage or property damage.[6] This is not to be construed as an order to any property owner to execute such agreements. It is a condition the property owners must comply with before the plaintiffs will be heard to complain of non-compliance with this decree.

Costs are taxed against the defendants.

## APPENDIX A

EXCERPTS FROM THE MINUTES OF THE DALLAS COUNTY COMMISSION OF AN ADJOURNED REGULAR MEETING HELD NOVEMBER 4, 1953:

A large delegation from Selmont appeared bringing in a petition signed by over one hundred residents of Selmont, requesting that the County pave the streets of Selmont, which consists of Selmont, Oakdale and River Terrace, generally known as Selmont. The Chief spokesmen were Martin Jones, Ed Day and Reverend Higgins. After a lengthy discussion of this matter, on motion duly made, seconded and carried, it was agreed that the streets in Selmont and also the streets of Summerfield be paved by the County at no expense to the adjacent property owners as soon as the necessary engineering and construction details could be worked out in the Spring. This was based on an agreement that the

adjacent property owners would give sufficient land to guarantee a 40-foot right-of-way and would sign agreements releasing the County from any liability as to water damage or property damage.

This is to certify that the above is a true excerpt of the minutes of an adjourned Regular Meeting of the Dallas County Commission, held on November 4, 1953, Found in Book M, Page 197.

Jean H. Ryall
Notary Public

## APPENDIX B
PAGE 378

On motion duly made, seconded and unanimously carried, the following Resolution was adopted by the Board:

## A RESOLUTION

WHEREAS, various persons, firms and/or corporations are platting properly into sub-divisions in the urban districts of this County adjacent to the City of Selma and within its Police Jurisdiction and Planning Commission Jurisdiction; and,

WHEREAS, such individuals, firms, corporations and residents of such sub-divisions from time to time desire that the County join in the expense of streets, roads and public ways thereto and therein; and,

WHEREAS, the County, through its Court of County Revenues, desires to be of such assistance, as is within the law and good judgment of the Court, as it may render such people.

NOW THEREFORE, BE IT RESOLVED by the Court of County Revenues that it hereby declares the following to be its established policies in such matters:

1. That the County will take over and maintain as public highways ONLY such streets, roads and public ways in such sub-divisions as are legally platted, at the expense of the developers, and approved by the Selma City Planning Commission.

6. See Defendants' Exhibit #19, Appendix A.

2. That all such streets, roads and public ways lying within such sub-divisions shall be improved, at the expense of the developers, through grading, drainage, and surfacing, according to plans and specifications submitted by the developers and approved by the County Engineer, before they will be taken over for maintenance by the County.

3. That a written application for acceptance of the streets, roads and public ways of each sub-division shall be made to the County, by the adjoining property owners or developers, and said application shall be accompanied by plans showing the layout, contours, profiles and grades of all streets, roads and public ways, typical sections, drainage, surfacing and location of all utilities. Said application shall be considered at length by the Court of County Revenues and its decision shall be spread upon its minutes.

4. All required utilities shall have been installed before acceptance of the streets, roads and public ways by the County, and the County assumes no responsibility for the maintenance of these utilities.

5. Nothing herein contained is intended to obligate the County on any proposed sub-divisions until a specific resolution covering the specific sub-division is approved by the Court of County Revenues and spread upon its minutes.

### APPENDIX C

#### Book P Page 312

On motion duly made, seconded and carried the Court did adopt the following:

#### RESOLUTION

"IT IS HEREBY RESOLVED by the Court of County Revenues in Regular Session, July 11, 1966, that the Resolution regarding subdivisions adopted February 7, 1955, Monday, and recorded in Book M, Page 378, be amended to cover all subdivisions lying within the boundaries of Dallas County in lieu of only those within the Police Jurisdiction and the Selma Planning Commission Jurisdiction of the City of Selma, and that Section one (1) be amended as follows:

(1) That the County will take over and maintain as public highways ONLY such streets, road and public ways in such sub-divisions as are legally platted, at the expense of the developers, and approved by the Dallas County Engineer. All other sections will remain as approved and adopted February 7, 1955.