Mr. William FRANKLIN et al.,
Plaintiffs-Appellants,

v.

CITY OF MARKS et al., Defendants-Appellees.

No. 29302.

United States Court of Appeals,
Fifth Circuit.

March 2, 1971.

Kent Spriggs, Oxford, Miss., Mose Kincaid, Batesville, Miss., for plaintiffs-appellants.

Ben M. Caldwell, Larry O. Lewis, Marks, Miss., for defendants-appellees.

Before BROWN, Chief Judge, WISDOM and MORGAN, Circuit Judges.

WISDOM, Circuit Judge:

In this Section 1983[1] action the plaintiffs challenge the validity of a de-annexation ordinance adopted May 7, 1963, by the Board of Aldermen of the City of Marks in Quitman County, Mississippi, and approved by the County Chancery Court.

In a municipal annexation or de-annexation proceeding in Mississippi, state law allows citizens of the municipality and residents of the area in question to appear and to object to the ordinance and allows them ten days within which to appeal from the chancery decree approving the ordinance establishing the corporate limits of the municipality. The district court held that this ten-day period for appeal in the de-annexation proceeding should be treated as the statute of limitations applicable to this civil rights action under 42 U.S.C. § 1983. We reverse.

---

1. 42 U.S.C. § 1983 provides:

*Civil action for deprivation of rights.*

Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the person injured in an action of law, suit in equity, or other proper proceedings for redress.

## I.

In February 1961 the Board of Aldermen of the City of Marks in Quitman County, Mississippi, adopted an ordinance annexing certain land beyond the corporate limits. Thereafter, the Chancery Court issued an order finding that the proposed annexation was reasonable and required by public convenience and necessity. In its order the court in part stated:

"* * * that the City of Marks will immediately give police and fire protection to the proposed annexed territory as quickly as the same can be placed in the proposed annexed territory already, that fire hydrants will be placed in the newly annexed territory immediately, that the streets and drainage will be improved in the proposed annexed territory and that the streets will be placed in future paving projects had by the City of Marks."

In this suit the plaintiffs allege that none of these improvements were made and none of the services rendered in the annexed area.

On May 7, 1963, the Marks Board of Aldermen adopted an ordinance contracting the corporate boundaries of the city so as to exclude the area annexed two years before. In accordance with Section 3374–10 of the Mississippi Code of 1942, the City filed a petition in the Chancery Court of Quitman County for approval of the de-annexation. The Court fixed August 19, 1963, for the hearing of the petition and gave notice by publication as provided by state law. No person presented himself at the hearing to oppose the de-annexation. The Chancellor then ordered a decree contracting the corporate limits of Marks by eliminating the area in question. No one having appealed the decree within ten days, the decree became final under Section 3374–13 of the Mississippi Code.

In this suit the plaintiffs allege that they are poor, black residents of the de-annexed area who are "a politically active class of persons who constituted an opposition to the governing body of the City". They allege that they and others living in the area are without sewers, paving, adequate street lights, fire hydrants, fire and police protection, and garbage collection, as contemplated by the annexation of 1961 and, importantly, are unable to vote in municipal elections in Marks. They contend that the City discriminated against them in violation of the Equal Protection Clause of the Fourteenth Amendment, infringed upon their right to vote in violation of the Fifteenth Amendment, and abridged their rights to free speech, assembly, and political expression in violation of the First Amendment.

The complaint was filed on August 13, 1969. This is six days short of six years after the entry of the Chancery Court's final decree, and therefore, so the plaintiffs contend, within the Mississippi six year statute of limitation applicable here.

The defendants moved to dismiss on the ground that the ten day statutory period provided for an appeal from the entry of a decree is applicable here and, in the absence of an appeal being timely taken to the Supreme Court of Mississippi, the Chancery Court decree became final. This, they assert, means finality as to all objections to the de-annexation proceeding including that asserted by the plaintiffs.

The district court pointed out that in federal civil rights cases, citing Beard v. Stephens, 5 Cir. 1967, 372 F.2d 685, "where Congress has failed to provide an express statute of limitation, the federal courts look to the State law to determine the applicable period of limitation." Here, the court said:

"* * * it was ten days, as provided by statute. The failure to appeal within that time by these plaintiffs or by their predecessors in interest bar their attacking the judgment at this late date. No good cause has been shown to the Court why these claims now urged could not have been urged at that time and the aid of the federal court, if necessary, invoked to

have prevented the entry of a decree violative of their federally protected rights."

The court noted that while laches is ordinarily a matter to be developed on actual prejudice, that "such a doctrine would be peculiarly applicable to this kind of a case where many of the actors, after a lapse of six years, have passed from the scene." Accordingly, the court granted the defendants' motion to dismiss the complaint.

## II.

◼◼ The ten-day period for appeal from the chancery decree was not a true statute of limitations in the proper sense that such a statute fixes the interval between the time of accrual of a right and the time allowed for commencement of an action to enforce the right. Instead, it was, as the brevity of the period in itself showed, simply a procedural limitation on the parties' use of appellate process in a municipal de-annexation proceeding. It was a built-in, conditional limitation inseparable from the Mississippi municipal annexation proceedings.[2] The right to object to an ordinance establishing municipal boundaries did not exist in common law. Here it was a special right of parties to the proceeding a municipality had to go through in enlarging or contracting the city limits. The notice by publication,

the opening of the chancery hearing to aggrieved residents, the appeal within ten days by "the municipality or any other interested person who was a party to the proceeding" (§ 3374–14) all had to do with whether "the proposed enlargement or contraction is reasonable and is required by the public convenience and necessity" (§ 3374–13).

Such a proceeding—where the measure of the law is the length of the chancellor's foot—has no necessary relation to the accrual of a different right of action and the commencement of an entirely different proceeding in a different forum. Least of all can it be said that the ten-day period for appeal provided in a state chancery proceeding to settle a municipality's boundaries is a statute of limitation barring a federal civil rights action based on a congressional enactment which was entitled "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States * * *."[3]

In Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, the Supreme Court carefully considered the legislative history of Section 1983. The Court found "threads of many thoughts running through the debates," but that "the present section had three main aims." First, "it might, of course override certain kinds of state laws," that is, "invid-

---

2. Statutes of limitation are to be distinguished from statutes which create a right of action not existing at common law and restrict the time within which action may be brought to enforce the right. Although the general rule is that a true statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself, the limitation of time for commencing an action under a statute creating a new liability enters into and becomes a part of the right of action itself and is a limitation not only of the remedy but of the right also; the right to recover depends upon the commencement of the action within the time limit set by the statute, and if that period of action is gone forever. The statute is an offer of an action on condition that it be commenced within the specified time, and if the offer is not accepted in the only way

in which it can be accepted, by a commencement of the action within the specified time, the action and right of action no longer exist and the defendant is exempt from liability.

Whether an enactment is in the nature of a conditional statute, or whether it is a statute of limitations, should be determined from a proper construction of its terms. The fact that the limitation is in the same statute as the one creating the new liability is persuasive of the fact that it is intended as a condition of the right created, but this is not conclusive. 51 Am.Jur. Limitations, 2d 599, 600.

3. 42 U.S.C. § 1983 was originally enacted as § 1 of the Civil Rights Act of April 20, 1871, ch. 22, 17 Stat. 13, and was popularly known as the Ku Klux Klan Act.

ious legislation by States against the rights or privileges of citizens of the United States." Second, "it provided a remedy where state law was inadequate." "The third aim was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice." In McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 672, the Court noted a fourth aim: "to provide a remedy in the federal courts supplementary to any remedy any State might have." *See* Moreno v. G. C. Henckel, Jr., 5 Cir. 1970, 431 F.2d 1299. These aims would be seriously curtailed, if not completely frustrated, when civil rights are imperiled by municipal boundary changes, if a state could, in effect, modify this important act of Congress, by limiting litigants to court action within ten days of the chancery decree approving the boundaries. It is possible that the "reasonable" test which the chancellor must apply would take into consideration some of the elements of the alleged wrongdoing arising out of the de-annexation, but as Mr. Justice Harlan suggested in his concurring opinion in Monroe v. Pape, 365 U.S. 192, 196, 81 S.Ct. 486, 488,

> "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right."

When Congress creates a right without a limitation it is sometimes useful to resort to the fiction that the congressional silence means that Congress expects the state rule to be applied. But it is unthinkable to use this fiction to impute to the ardent civil rights advocates in Congress a hundred years ago any intention to limit the Civil Rights Act of 1871 to a ten-day statute of limitation.

## III.

In Beard v. Stephens, 5 Cir. 1967, 372 F.2d 685, this Court looked first to the "essential nature" of the claims under federal law and then to "what statute of limitations would the state courts hold applicable to this type or class of claim." In that case the Court noted that an action against a sheriff for a wrongful shooting by his deputies during an arrest constituted an action of trespass; the court therefore resorted to the Alabama six-year statute of limitations applicable to actions in trespass. The Court treated two other claims as essentially actions on the case subject to a one-year statute of limitations. This approach has been used by other courts, most frequently when the Section 1983 wrong resembles a traditional tort.[4] Even in such a case it has been pointed out:

> "Section 1983 of the Civil Rights Act clearly creates rights and imposes obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common-law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same. The elements of an action under Section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability. * * * [At this point the Court quoted the language of Mr. Justice Harlan quoted in Section II of this opinion.]

Smith v. Cremins, 9 Cir. 1962, 308 F.2d 187.

Here the essential nature of the wrongs complained of is the abuse of the

4. *See generally* Note, A Limitation Actions for Deprivation of Federal Rights, 68 Colum.L.Rev. 763 (1968) ; Note, Choice of Law under Section 1983, 37 U.Chi. L.Rev. 494, 502 (1970).

**670**

municipal procedure for establishing corporate limits. The alleged purpose and effects were, under color of law, to deprive the plaintiffs of rights secured by Section 1983 and by the United States Constitution. In state law there is no real analogy to these wrongs.

We know, however, that when a municipality provides inadequate services to residents "on the other side of the tracks" that this deprivation constitutes unlawful discrimination. Hawkins v. Town of Shaw, Mississippi, 5 Cir. 1970, 437 F.2d 1286. Here the plaintiffs were residents of the City of Marks at the time of the de-annexation proceeding. Undoubtedly, the Town of Shaw could not escape its federal constitutional and statutory obligations by a de-annexation proceeding. We know too that a change in location of polling places as a result of changes in municipal boundaries by annexation may have discriminatory purposes and effects and require federal scrutiny under the 1965 Voting Rights Act. Perkins v. Mathews, 1970, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476. What might be regarded as a routine municipal ordinance or proceeding in state law is therefore subjected to thorough analysis and examination in federal law when the effect of the ordinance or proceeding is to deprive citizens of their federally protected rights.

Accepting the allegations of the complaint as true for purposes of the motion to dismiss and finding no analogue in state law, the court must resort to the state's catch-all statute of limitations. Mississippi Code, Section 722 states: "All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after." It is the limitation to be applied to actions not otherwise explicitly covered by a limitation.

We hold, therefore, that Section 722 of the Mississippi Code provides the appropriate limitation for this action.

The judgment is therefore reversed.