Clay L. SHAW, Plaintiff-Appellee,

v.

Jim GARRISON et al.,
Defendants-Appellants.

No. 75–2019.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1977.

Malcolm W. Monroe, Michael L. Goldblatt, A. E. Papale, Jr., Peter J. Butler, Clem Tricon Sehrt, New Orleans, La., for defendants-appellants.

F. Irvin Dymond, Edward F. Wegmann, William J. Wegmann, Salvatore Panzeca, New Orleans, La., for plaintiff-appellee.

Before WISDOM and INGRAHAM, Circuit Judges, and GROOMS,* District Judge.

WISDOM, Circuit Judge:

This case, before us on an interlocutory appeal, 28 U.S.C. § 1292(b), arises from an investigation conducted by the then district attorney of Orleans Parish, Jim Garrison, concerning the assassination of President John F. Kennedy and the prosecution of Clay Shaw for conspiring to assassinate President Kennedy. It presents a novel question of law: Does an action a plaintiff institutes under 42 U.S.C. § 1983 survive his

death despite the fact that the claim would abate under state law? We agree with the district court that it does survive and we borrow liberally from Judge Fred J. R. Heebe's reasoning in his opinion reported at 391 F.Supp. 1353.

I.

There is no need to recite the Kafkaesque facts in this case which the district judge characterized as "one of the most bizarre episodes in American political and legal history." 391 F.Supp. 1353. In addition to the district court's adequate discussion, 391 F.Supp. 1353, 1356–58, the factual background is fully set out in a related case, *Shaw v. Garrison*, 1971, E.D.La., 328 F.Supp. 390, aff'd 5 Cir. 1972, 467 F.2d 113, *cert. denied* 1972, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317. It suffices here to note that Shaw, through his executor, charges that District Attorney Garrison and the other named defendants, certain citizens of New Orleans, deprived him of his civil rights by improperly linking him with the Kennedy assassination and by conducting, as well as financing, a publicized investigation and prosecution of him for his alleged role in that national tragedy. The question presently before us arises because Shaw died after he initiated this § 1983 action but before the matter was ever brought to trial.

Upon his death on August 15, 1974, Shaw was not survived by a spouse, children, parents, or siblings. Under Louisiana law, the applicable state law if state law is applicable, pending actions for personal damages survive only in favor of certain classes of beneficiaries named in La.Civ. Code Art. 2315.[1] *See J. Wilton Jones Co. v. Liberty Mutual Insurance Co.*, Ct.App.1971, 248 So.2d 878, *writ denied*, 259 La. 61, 249 So.2d 202, cited with apparent approval in

* Senior District Judge for the Northern District of Alabama, sitting by designation.

1. *Art. 2315. Liability for acts causing damage; survival of action*

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.

The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period

*Austrum v. City of Baton Rouge*, 1973 La., 282 So.2d 434. Under Louisiana law, because Shaw has no statutory survivors an executor is a proper survivor only to actions for property damage. All parties agree that if Louisiana law applies, Shaw's § 1983 claim abates.[2]

We observe at the outset that Fed.R. Civ.P. 25(a)(1)[3] does not resolve the question what law of survival of actions should be applied in this case. That rule simply describes the *manner* in which parties are to be substituted in federal court once it is determined that the applicable substantive law allows the action to survive a party's death. *Ransom v. Brennan*, 5 Cir. 1971, 437 F.2d 513, 520, *cert. denied*, 1971, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680; 3B Moore's Federal Practice ¶ 25.04[1], at 121; Note, 44 Fordham L.Rev. 666, 667–68 (1975). This Court has previously determined that Art. 2315 of the La.Civil Code is substantive rather than procedural and consequently that "it does not clash with Rule 25(a)." *Roberson v. N. V. Stoomvaart Maatschappij*, 5 Cir. 1975, 507 F.2d 994, 996. We must look to the civil rights statutes themselves to determine whether Louisiana's law of survival must be applied to this action.

■ "Properly viewed . . . [42 U.S.C.] § 1988 instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts." *Moor v. County of Alameda*, 1973, 411 U.S. 693, 703, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596. That section provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.

As used in this article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectively.

2. Whether this suit could properly be deemed an action for damage to property because of

the costs Shaw incurred in defending himself and the losses he suffered as a direct result of his prosecution was vigorously contested below and decided in the negative. Because this holding by the district court has not been appealed, we intimate no view on the issue.

3. *Rule 25. Substitution of Parties.*
   *(a) Death.*
   (1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

In effect, § 1988 sets forth a three step process for determining the applicable substantive law in civil rights cases. First, the Court must decide whether the Civil Rights Acts are "deficient" in furnishing a remedy for the vindication of a plaintiff's civil rights. If this inquiry is answered affirmatively, we are then directed to look to state law to fill the interstices in the federal provisions. Finally, if there is state law available to fill the gap in the federal statutes, we must insure that the state law is not inconsistent with federal statutory and constitutional law.

This Court has already determined that the civil rights statutes are deficient with respect to survivorship. *Brazier v. Cherry*, 5 Cir. 1961, 293 F.2d 401, 408, *cert. denied*, 1961, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136. Other courts, including the Supreme Court, have reached the same conclusion. *Moor v. County of Alameda*, 1973, 411 U.S. 693, 702, n. 14, 93 S.Ct. 1785, 36 L.Ed.2d 596. *Pritchard v. Smith*, 8 Cir. 1961, 289 F.2d 153, 155. We therefore must apply Louisiana's survivorship law unless that law "is inconsistent with the Constitution and laws of the United States."

In analyzing whether La.Civ.Code Ann. art. 2315 is incompatible with federal law, it is important to clarify the type of action we are dealing with. As the district court stressed:

> "We emphasize at the outset that we are not concerned with wrongful death actions for damages to others caused by the tort victim's death. Also to be distinguished are survival of causes of action, where the tort victim dies without bringing suit, and the question is whether a party may *institute* suit to recover for the tort victim's own damages."

391 F.Supp. at 1361 (emphasis in original). Instead, we are concerned with a *pending* action for damages, instituted by a plaintiff on his own behalf *before* his death, seeking damages to redress a violation of his civil rights.[4] Moreover, we are dealing with a situation in which the application of the relevant state survival law to a federal cause of action will leave the plaintiff without a remedy in either federal or state courts. See *Moragne v. State Marine Lines*, 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. This we refuse to do. Because Louisiana's survivorship provisions would cause Shaw's pending civil rights action to abate, we find that Louisiana law is inconsistent with the broad remedial purposes embodied in the Civil Rights Acts—laws designed to insure to all citizens "the right to be free from deprivation of constitutional civil rights." *Brazier v. Cherry*, 293 F.2d at 409. We therefore decline to apply Louisiana law of survival. As the Supreme Court said in *Moor v. County of Alameda*, "[§ 1988] expressly limits the authority granted federal courts to look to the common law, as modified by state law, to instances in which that law 'is not inconsistent with the Constitution and laws of the United States.'" 411 U.S. at 706, 93 S.Ct. at 1794. The phrase "laws of the United States" must be read to encompass the civil rights statutes. It would be specious reasoning at best to suggest that Congress was concerned about the possibility that in enforcing the civil rights statutes, state law inconsistent with tangential federal law might be relied upon, but was not concerned about the possibility of hostile state law interfering with carrying out the purposes of the Civil Rights Acts themselves. See *Monroe v. Pape*, 1960, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

Where state law has proved to be an unsuitable vehicle to provide the relief envisioned by § 1983, federal courts have looked beyond the inhospitable law. In *Pierson v. Ray*, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, the Supreme Court held that consent to an injury is not a defense available under § 1983 regardless of its availability under state law. Similarly, the Second Circuit rejected the contention that "all

---

4. This is therefore not an attempt to sue under the civil rights statutes for deprivation of another's constitutional rights. Such suits are impermissible. *O'Malley v. Brierley*, 3 Cir. 1973, 477 F.2d 785; *Brown v. Board of Trustees of LaGrange Independent School Dist.*, 5 Cir. 1951, 187 F.2d 20.

state officials in suits brought under § 1983 enjoy an immunity similar to that they might enjoy in suits under state law", noting that such a holding "would practically constitute a judicial repeal of the Civil Rights Acts." *Jobson v. Henne*, 2 Cir. 1966, 355 F.2d 129, 133. For over 60 years this Court has said that the statute of limitations applicable to § 1983 actions is determined by state law.[5] Nevertheless, we refused to apply a ten day state statute of limitations to an action brought under § 1983 because the "aims [of the civil rights statutes] would be seriously curtailed, if not completely frustrated . . . if a state could, in effect, modify this important act of Congress, by limiting litigants to court action within ten days . . ." *Franklin v. City of Marks*, 5 Cir. 1971, 439 F.2d 665, 669. In sum, as one commentator has concluded:

> "Generally, state statutes have been considered only for the beneficial effect they would have on the plaintiff's case. If the federal policy in favor of the protection of civil rights is a strong one, as the federal courts frequently insist, then local concerns reflected in state statutes that stand to bar or diminish plaintiff's chances of recovery will likely give way."

Theis, *Shaw v. Garrison*: Some Observations On 42 U.S.C. § 1988 And Federal Common Law, 36 La.L.Rev. 681, 688 (1976).

## II.

■ Because Louisiana law is unsuitable, and therefore unavailable, to remedy § 1983's deficiency with respect to survival,

we hold that Shaw's action survives in favor of his estate as a matter of federal common law. Federal common law is alive and well and living in the federal judicial system.[6] Federal courts will recognize federal common law when it is necessary to carry out the congressional objectives of federal legislation. *J. I. Case v. Borak*, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423; *Textile Workers v. Lincoln Mills*, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. In *Lefton v. City of Hattiesburg*, 5 Cir. 1964, 333 F.2d 280, this Court commented upon the duty of the federal courts to use their common law powers to advance the purposes of the civil rights statutes.

> "In civil rights cases . . . Congress has directed the federal courts to use that combination of federal law, common law, and state law as will be best 'adapted to the object' of the civil rights laws. . . Therefore a federal court is required to use common law powers to facilitate and not to hinder, '[p]roceedings in vindication of civil rights.'"

333 F.2d at 284.

■ Our utilization of federal common law to allow Shaw's action to survive in the face of hostile state law furthers the policy voiced in *Lefton*, and is consistent with the Supreme Court's decision in *Sullivan v. Little Hunting Park, Inc.*, 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386. The Supreme Court there recognized the broad remedial policies underlying the civil rights statutes and held

> "that both federal and state rules on damages may be utilized, whichever bet-

**5.** *O'Sullivan v. Felix*, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; *Shaw v. McCorkle*, 5 Cir. 1976, 537 F.2d 1289. *See* Note, A Limitation on Action for Deprivations of Federal Rights, 68 Colum.L.Rev. 763 (1968). We agree with Judge Heebe below that the fact that state statutes of limitation apply to federal civil rights actions

> in no way undercuts our decision today for there is a significant distinction between statutes of limitation and those restricting survival of causes of action. Statutes of limitation merely regulate the permissible time for filing suit: so long as the applicable period is clear, a plaintiff can assure himself of filing a timely action. However, statutes regulating

survival may, as the Louisiana statute would here, entirely bar plaintiffs from ever filing suit. Thus the hardship worked by the latter type of statute is much more severe.

391 F.Supp. at 1366 n. 19.

**6.** *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System (2d ed. 1973); Friendly, In Praise of Erie—And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383 (1964); Note, Choice of Law under Section 1983, 37 U.Chi.L.Rev. 494 (1970); Note, The Federal Common Law, 82 Harv.L.Rev. 1512 (1969).

ter serves the policies expressed in the federal [civil rights] statutes. *Cf. Brazier v. Cherry,* 293 F.2d 401. The rule of damages, whether drawn from federal or state sources, *is a federal rule* responsive to the need whenever a federal right is impaired."

(Emphasis added.) 396 U.S. at 240, 90 S.Ct. at 406. We see little difference between the development of federal law to allow for maximum damage recovery under the Civil Rights Acts and the formulation of federal law to allow a previously instituted civil rights action to survive in favor of the injured party's estate. Both results follow from the "well settled [principle] that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 1946, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939.

Moreover, adoption of a federal rule of survival is desirable because it fosters the uniform application of the civil rights laws. *Basista v. Weir,* 3 Cir. 1965, 340 F.2d 74; *Nelson v. Knox,* 6 Cir. 1958, 256 F.2d 312 (Stewart, J.). In *Basista,* the court refused to apply a Pennsylvania damage rule that prohibited the award of punitive damages without actual damages. The court observed:

> "We believe that the benefits of the [Civil Rights] Acts were intended to be uniform throughout the United States, that the protection to the individual to be afforded by them was not intended by Congress to differ from state to state, and that the amount of damages to be recovered by the injured individual was not to vary because of the law of the state in which the federal court suit was brought. Federal common law must be applied to effect uniformity, otherwise the Civil Rights Acts would fail to effect the purposes and ends which Congress intended."

340 F.2d at 86. Were we to look only to the state law of survival, Shaw's instant action would survive in four of the states in this

Circuit—Florida, Georgia, Mississippi, and Texas—and abate in two—Alabama and Louisiana.[7] Such divergent results are not a justifiable product of a federal statute promulgated to insure the availability of redress for the deprivation of federally protected civil rights.

The marked tendency of the federal courts to allow actions to survive in other areas of particular federal concern further compels our result here. As this Court observed in *Brazier v. Cherry,* 5 Cir. 1961, 293 F.2d 401,

> "At every turn the Supreme Court, by drawing on available state legislation or giving a broad liberal effect to federal statutes has found a way to make compensation effective despite statutory language which might have made non-survival plausible, if not probable, during an earlier era."

293 F.2d at 406. This trend is most evident in maritime law, where the Supreme Court, with little or no statutory authorization has held that Jones Act actions survive both the death of the tortfeasor, *Cox v. Roth,* 1954, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, and the death of the beneficiary in a wrongful death action, *Van Beeck v. Sabine Towing Co.,* 1936, 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685, and has used state law to allow a general admiralty action for damages to survive, *Just v. Chambers,* 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903. This Circuit has applied federal common law to allow an action for injury caused by unseaworthiness to survive the plaintiff's death despite the fact that the suit would not have survived under Article 2315 of the Louisiana Civil Code. *Roberson v. N. V. Stoomvaart Maatschappij,* 5 Cir. 1975, 507 F.2d 994.

The willingness of the federal courts to permit federal actions to survive where statutory guidance on the matter is lacking has not been limited to admiralty suits. Private anti-trust actions have been held to survive both the death of the plaintiff, *Barnes Coal Corp. v. Retail Coal Merchants' Ass'n,* 4 Cir. 1942, 128 F.2d 645, and the

7. Code of Ala. Title 7, § 150; Fla.Stat.Ann. § 46.021; Ga.Code Ann. § 3–505; La.Civ.Code Ann. Art. 2315; Miss.Code Ann. § 91–7–233; Vernon's Tex.Civ.Stat.Ann. Art. 5525.

death of the defendant, *Rogers v. Douglas Tobacco Board of Trade*, 5 Cir. 1957, 244 F.2d 471; and it has been held under the FELA that the death of a deceased railroad worker's father did not cause the father's survival action for his son's injuries under 45 U.S.C. § 59 to abate, even though the father was the only available person for whose benefit a survival action could be maintained under the terms of 45 U.S.C. § 59. *Dellaripa v. New York, New Haven & Hartford R. Co.*, 2 Cir. 1958, 257 F.2d 733.

■ The appellants point out that other federal statutes specifically providing for the survival of actions—the FELA, 45 U.S.C. § 59, the Jones Act, 46 U.S.C. § 688, and the Longshoremen's and Harbor Workers' Compensation Act [LHWCA] 33 U.S.C. § 908—limit the class of beneficiaries that can bring the action to those bearing some close blood or familial relationship to the deceased.[8] This fact, however, does not require us to reach a similar result here for two reasons. First, and most obviously, the limitations put on the survival of actions under those statutes were placed there by Congress; no such constraints confine the granting of relief under § 1983. *Brazier v. Cherry*, at 403–404. Second, those statutes are strictly compensatory in nature; the civil rights statutes, on the other hand, were designed to serve both deterrent as well as compensatory purposes. This difference in underlying policy is evidenced by the fact that while punitive damages are available under § 1983 even absent a showing of special or actual damages, *Basista v. Weir*, 3 Cir. 1965, 340 F.2d 74, punitive damages are not available under the terms of the LHWCA, 33 U.S.C. § 908, or under the FELA, 45 U.S.C. § 59, *Kozar v. Chesapeake and Ohio Railway Co.*, 6 Cir. 1971, 449 F.2d 1238, and there is some question as to whether and when they are available under

the Jones Act, 46 U.S.C. § 688. *See Phillip v. United States Lines Co.*, 3 Cir. 1966, 355 F.2d 25, *Mpiliris v. Hellenic Lines, Ltd.*, 1970, S.D.Tex., 323 F.Supp. 865, aff'd 5 Cir. 1971, 440 F.2d 1163.

In civil rights cases, the federal courts have followed the trend towards allowing federal causes of action to survive. Under § 1988, state survival statutes have primarily been considered when their effect on the plaintiff's case was beneficial, allowing the action to survive either the death of the injured plaintiff, *Hall v. Wooten*, 6 Cir. 1974, 506 F.2d 564; *Brazier v. Cherry*, 5 Cir. 1961, 293 F.2d 401; *Javits v. Stevens*, 1974, S.D.N.Y., 382 F.Supp. 131; *Perkins v. Salafia*, 1972, D.Conn., 338 F.Supp. 1325, or the death of the defendant wrongdoer, *Pritchard v. Smith*, 8 Cir. 1961, 289 F.2d 153. However, as the district court correctly pointed out:

"The Seventh Circuit, in commenting upon *Brazier v. Cherry, supra,* noted that the result allowing survival of the cause of action had a firm basis in federal law and policy quite apart from any reference to § 1988. The Court of Appeals pointed out that '[w]hile many of the comments contained in these cases concerning the nature of Section 1988 are well considered, the decisions do not necessarily depend upon that statute'. *Baker v. F & F Investment*, 420 F.2d 1191, 1196 n. 7 (7th Cir. 1970). [*cert denied*, 1970, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49]"

391 F.Supp. at 1366. The Sixth Circuit's recent decision and reasoning in *Hall v. Wooten* is consistent with the Seventh Circuit's observations about § 1983 survival decisions in *Baker*. In *Hall* the court held "that under federal common law, actions for personal injury . . . survive". 506 F.2d at 569. Because, however, the court went on to "adopt as federal common

---

**8.** The FELA, 45 U.S.C. § 59, permits survival of the decedent's wrongful injury action for the benefit of the surviving widow and children, parents, and next of kin dependent on the decedent. The Jones Act, 46 U.S.C. § 688, incorporates the FELA provision by reference. The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908 provides that in

the event of the death of an employee receiving compensation for permanent partial disability, the total unpaid amount of the award is payable to the surviving widow, child, and dependent grandchildren, brothers, sisters, and other persons who satisfy the definition of the term dependent in 26 U.S.C. § 152.

law, the law of Kentucky, the forum state, which provides for the survival of actions for personal injury", 506 F.2d at 569, it is unclear whether the court was relying upon § 1988's directive to look to consistent state law, or creating an independent federal common law rule of survival for § 1983 actions.

The formulation of such a rule was not essential to allowing the plaintiff's action in *Hall* to survive and permitting a full vindication of his civil rights. It is crucial here. We therefore hold that as a matter of federal common law, a § 1983 action instituted by a plaintiff prior to his death survives in favor of his estate.