Calvin INGRAM, Plaintiff-Appellant,

v.

STEVEN ROBERT CORPORATION et al., Defendants-Appellees.

No. 76–3674

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 4, 1977.

R. Edward Massey, Jr., Mobile, Ala., for plaintiff-appellant.

Paul W. Brock, Benjamin T. Rowe, Mobile, Ala., for defendants-appellees.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

GOLDBERG, Circuit Judge:

Calvin Ingram, a black man formerly employed by the defendant, alleges that defendant dismissed him from his job on April 10, 1974 because of his race and his union activities. Plaintiff brought suit under 42 U.S.C. § 1981 and § 1983 on April 28, 1976, seeking reinstatement and an award of back pay. The district court dismissed the § 1983 suit because it found insufficient allegations that defendant, a private Alabama corporation, was operating under color of state law. Ingram does not challenge this decision. The district court dismissed the § 1981 cause of action because Ingram had failed to comply with the one year statute of limitations prescribed by Alabama law for "[a]ctions for any injury to the person or rights of another, not arising from contract . . ." Ala.Code tit. 7, § 26.[1] On appeal, Ingram does not contest the principle that state limitations statutes circumscribe his federal claim under § 1981; rather, he argues that the district court applied the wrong limitations provision.

I. The Shavian Guideposts

██ Federal courts must look in the first instance to the applicable state statute of limitations in actions for back pay or similar damages under a federal statute for which Congress failed to provide limitations

---

* Rule 18, 5 Cir.; *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

1. Section 26 provides in part:
    The following must be commenced within one year:

* * * * * *

Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated.

period. *See* 42 U.S.C. § 1988; *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); *Beard v. Stephens*, 372 F.2d 685, 688 (5th Cir. 1967).

Whether it should be inferred from Congressional silence that Congress intended that state limitations periods be applied at all is a matter that has perhaps unfortunately troubled historians more than judges. *See* Note, A Limitation on Action for Deprivations of Federal Rights, 68 Colum.L.Rev. 763 (1968). Instead, the question of selecting one from among many possible state limitations provisions has been, for better or worse, the focus of judicial attention.

To be sure, in deciding the period governing § 1983 we have occasionally heeded the principle that our choice of a state statute of limitations must be based on which statute will best effectuate the Congressional policies underlying § 1983. Thus, in *Franklin v. City of Marks*, 439 F.2d 665, 669 (5th Cir. 1971), the court refused to be bound by a state statute of limitations so short (10 days) that it impinged on policies underlying § 1983. We have dealt with the abnormal case such as *Franklin,*, however, without articulating our reasons for applying state law in the normal case. Moreover, in the normal case we have quickly abandoned the pretence that our reason for selecting one among many state limitations provisions is that it best serves federal interests.

For example, one line of cases advises that the choice of a state limitations provision is a matter of determining based on federal law the "essential nature" of the federal claim, and then of determining under state law which limitation period would be applicable to a state claim of the same general category. *See Bell v. Aerodex, Inc.*, 473 F.2d 869, 971 (5th Cir. 1973); *Franklin v. City of Marks, supra,* 439 F.2d at 669–70; *McGuire v. Baker*, 421 F.2d 895, 898 (5th Cir. 1970). A second line of cases advises that the choice of a limitations period is based on how a state court applying state law would categorize the action for relief. *See Franks v. Bowman Transportation Co.*, 495 F.2d 398, 405 (5th Cir. 1974),

*rev'd in part on other grounds,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Knowles v. Carson*, 419 F.2d 369 (5th Cir. 1969). Even the first line of cases tends, in practice, to rely heavily on state law in categorizing the claim presented, however, so that references to federal law even in this line tend to be of little import. Federal interests are thus generally subordinated to a mechanical application of state law.

Two recent cases in this circuit, *Shaw v. Garrison*, 545 F.2d 980 (5th Cir. 1977), and *Shaw v. McCorkle*, 537 F.2d 1289 (5th Cir. 1976), help provide the guideposts in this area. *Shaw v. McCorkle* analyzes the two lines of cases adverted to above and concludes that in determining which state statute of limitations applies to an action under § 1983, a federal court should determine first how the state court would categorize the action and then which state limitation period would apply to the action so categorized.

*Shaw v. Garrison* addressed the question whether state survivorship law or federal common law determined if a § 1983 plaintiff's death prior to trial caused his civil rights claim to abate. The court reasoned that since application of state survival law to the facts of that case would leave plaintiff without a remedy in either federal or state court, the state survivorship law was inconsistent with the broad remedial purposes embodied in the Civil Rights Acts. The court concluded that where state law proves to be an unsuitable vehicle to provide the relief envisioned by § 1983, the federal courts may look beyond the inhospitable law. It held that as a matter of federal common law the civil rights action survived in favor of plaintiff's estate. The *Garrison* court thus gave full effect to the principle—often ignored in the statutes of limitations cases—that where resort to state law is had to fill the interstices in federal provisions creating substantive rights, the touchstone must be whether a particular state statute effectuates the Congressional policies underlying the federal acts.

Nonetheless *Shaw v. Garrison* draws a critical distinction that tells us why the principle of *Shaw v. McCorkle* controls our treatment of the case at bar. Quoting from the lower court opinion, 391 F.Supp. 1353, the court distinguished between statutes regulating survival, which may entirely bar plaintiffs from ever filing suit, and statutes of limitations, which merely regulate the permissible time for filing suit.[2] Because the hardship worked by the former is much more severe than that occasioned by the latter, inhospitable state limitations provisions will carry greater weight than inhospitable survivorship provisions, and in the normal case recourse the state limitations law will be dispositive. If federal interests are affected, they are not so severely restricted when the state limitations provision applies that we need fear the definition of those interests in state terms for purposes of choosing the applicable statute of limitations.

With these guideposts before us, our next task is to decide which Alabama statute of limitations would be applied had this or a similar action been brought in state court.

## II. Contract or Tort?

■ Appellant incorrectly asserts that the district court decision was based on Ala.Code tit. 7, § 26(1), which prescribes a one year period for recovery of wages.[3] This court held § 26(1) to be unconstitutional with respect to back pay actions under the Fair Labor Standards Act in *Caldwell v. Alabama Dry Dock*, 161 F.2d 83 (5th Cir. 1947). To begin with, the continued vitality of *Caldwell* is questionable.[4] More important, the district court opinion cannot reasonably be construed as relying on § 26(1). We need not discuss whether that court could have relied on § 26(1), and if so whether it should have done so. Rather, we confine ourselves to the question whether the lower court erred in applying § 26, because under either § 26(1) or § 26 the one year statute of limitations would preclude Ingram's suit in the case at bar.[5]

2. This distinction has initial plausibility but needs to be more tightly drawn. That is, a statute regulating survivorship may also be conceptualized as regulating merely the permissible time for filing suit, the difference being that the period ends with plaintiff's death rather than with a pre-established date. The real difference is that a survivorship statute may foreclose the claim of a plaintiff who, like Shaw, timely files suit but dies before trial, whereas a statute of limitations penalizes only a plaintiff who, like Ingram, fails even to file suit within the prescribed time.

3. Section 26(1) provides:
   All suits and actions for the recovery of wages, overtime, damages, fees or penalties accruing under laws respecting the payment of wages, overtime, damages, fees and penalties, and specifically under the act of congress known as the Fair Labor Standards Act of 1938, as same has been or may hereafter be amended, and all other similar acts shall be brought within one year after the accrual of such cause of action, and all such causes of action accruing prior to the date hereof shall be brought within one year after the passage of this section. This section shall not affect suits pending at the time of its passage.

4. In *Caldwell* we held that § 26(1) was unconstitutional because the statute "discriminate[d] against rights and causes of action arising under a valid federal statute." 161 F.2d at 85. At the time of our decision, there were no laws regarding wages and hours or similar matters in the state of Alabama. Consequently the effect of § 26(1) was to discriminate against federal causes of action, specifically those under the Fair Labor Standards Act. Alabama has subsequently enacted a minimum wage law with respect to public contractors. See Ala. Code tit. 26, §§ 385(8)–(24). We therefore recognized in *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1196 (5th Cir. 1976), that the rationale of *Caldwell* has been undermined.

5. *United States v. Georgia Power Co.*, 474 F.2d 906 (5th Cir. 1973), a Title VII case, suggests that we should apply "the appropriate state statute of limitations governing actions for unpaid wages" when a plaintiff sues under a federal law creating a right to back pay as part of general remedial relief. Assuming arguendo that § 26(1) would be constitutional as applied, we need not decide whether § 26(1) would therefore be preferred to § 26 as the applicable statute of limitations in an action for reinstatement and back pay under § 1981, as well as under Title VII. *See Watkins v. Scott Paper Co.*, supra, 530 F.2d at 1196; *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 258 (5th Cir. 1974).

The appellant urges that the ostensible unconstitutionality of § 26(1) leaves open the field for the Alabama statutes of general application for actions based on implied and written contracts, which bear respective six and three year limitations. *See* Ala.Code tit. 7, §§ 21, 24. The district court applied the one year provision in Ala.Code tit. 7, § 26, applicable to tort actions not arising from a contract or specifically enumerated rights. Our choice among these statutes will be determined by whether an action for reinstatement and back pay for the employer's discharge of an employee for constitutionally prohibited reasons constitutes an action based on a contract (*ex contractu*) or on a right arising independently of the parties' agreement (*ex delicto*).

We think it clear that under the circumstances of this case Ingram's assertion of his rights under § 1981 and the fourteenth amendment arose independently of any agreement between him and his employer. Consequently his action was *ex delicto*, and the district court properly applied § 26.

We are aware that there is some conflicting authority. *Compare Buckner v. Goodyear Tire & Rubber Co.*, 476 F.2d 1287 (5th Cir. 1973), *adopting lower court opinion and aff'q* 339 F.Supp. 1108, 1118 (N.D.Ala.1972) (applicable statute of limitations in § 1981 suit is § 26 because action is essentially *ex delicto*); *with Boudreaux v. Baton Rouge Marine Contracting Co.*, 437 F.2d 1011, 1017 n.16 (5th Cir. 1971) (dictum that action under § 1981 is essentially *ex contractu*). We think the analysis in *Buckner* is superior, and we should in any event be bound to the holding in that case, as opposed to the dictum in *Boudreaux*. Moreover, the approach taken in *Buckner* reflects the approach adumbrated in *Shaw v. McCorkle, supra.* In *Boudreaux*, the court categorizes the federal right in federal terms as one designed to "make and enforce contracts." That is of course true, but it is inconsistent with the *McCorkle* court's suggestion that a federal court substantially rely on state law in categorizing the essential nature of the claim presented.

The *Buckner* court may be said to have relied on this categorization of the federal right in state terms. It bases its decision not on the language of § 1981 but rather on whether the right arose from a breach of promise or from a statutory duty independently of what the parties may or may not have agreed. 339 F.Supp. at 1118. *See generally Chambers v. Birmingham Trust & Savings Co.*, 232 Ala. 609, 168 So. 893 (1936). Answering this question in the affirmative, the court properly concludes that § 1981 is analogous to an *ex delicto* action in Alabama courts. The conclusion is both sound and entirely consistent with prior and subsequent authority. *See Watkins v. Scott Paper Co., supra*, 530 F.2d at 1196–97 (assuming *Caldwell* still applies, district court correctly limited Title VII action by § 26); *EEOC v. Griffin Wheel Co.*, 511 F.2d 456, 458 n.4 (5th Cir. 1975) (applicable limitation period in Title VII back pay suit is § 26); *Sewell v. Grand Lodge of International Association of Machinists*, 445 F.2d 545 (5th Cir. 1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972) (§ 26 applies to complaint under Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.*, alleging wrongful discharge from union position for exercise of first amendment rights).

III. Conclusion

It borders on the solecistic to legislate a federal cause of action cognizable in federal courts, but migrate to the states for a time limitation based on state law. Not only might the variations in limitations provisions among the states encourage forum shopping, but the stricture that federal courts choose among various state statutes engenders the confusion that often results when a federal court wanders about in alien state territory. Most important, of course, the uncertainty about which limitations provision applies affords inadequate notice to potential plaintiffs. Were we in the beginning, we might for the sake of uniformity argue for a federal common law limitation. We are not writing on a *tabula rasa*, however, but are the heirs of precedent. The precedent is clear. Absent a

common law limitation concept the federal courts were adrift. They found refuge in analogous state limitations provisions, there being no other place to go. The conclusion we must bear is neither rational nor historical, but purely precedential.

The judgment of the district court is AF-FIRMED.