Edward JEFFERSON et al. (see attached copy of docket sheet), Plaintiffs,

v.

H. K. PORTER COMPANY (now known as Connors Steel Company); United Steelworkers of America, AFL–CIO; and Local Union No. 2250, United Steelworkers of America, Defendants.

Civ. A. No. 76–G–1254–S.

United States District Court,
N. D. Alabama, S. D.

Feb. 6, 1980.

On Motion to Alter or Amend
Findings March 27, 1980.

Oscar W. Adams, Jr., Adams & Clemon, Birmingham, Ala., for plaintiffs.

Jerome A. Cooper, Cooper, Mitch & Crawford, Birmingham, Ala., for union defendants.

William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for Connors Steel Company.

## MEMORANDUM OPINION

GUIN, District Judge.

The present lawsuit is an outgrowth of objections to a Consent Decree in an earlier case involving the parties.[1]  In September of 1975, the Court approved the decree, resolving litigation which had been initiated in 1966.  The decree provided monetary compensation for members of the class determined to be entitled thereto under the settlement.  The majority of the class members accepted the monetary amounts allocated to them by the decree.  A year after the decree had been approved, the present lawsuit was filed by 35 objectors who ob-

---

1. H. K. Porter Company (now Connors Steel Company) is herein referred to as "Company". Defendants United Steelworkers of America and Local Union No. 2250, United Steelworkers of America are herein collectively referred to as "Union".

jected to the monetary provisions of the decree and seek to pursue their claims for monetary compensation.

Following extensive discovery, the cause was heard by the Court on January 14, 1980 on the defendants' joint motion for summary judgment. Having considered the joint motion, the arguments of counsel, and the undisputed facts, the Court concludes that there is no genuine issue as to any material fact and that defendants are due summary judgment on the grounds herein set forth.

## UNDISPUTED FACTS

In order to understand the issue now before the Court, it is necessary to review a 14 year history of litigation, as follows:

1. The present case has its roots in a lawsuit styled *Muldrow v. H. K. Porter Co.*, Civil Action No. 66–G–206–S, (herein referred to as "*Muldrow*"), which was filed in this Court in 1966.

2. *Muldrow* was brought as a class action by three class members who had filed charges with the Equal Employment Opportunity Commission (EEOC) in 1965. Following the issuance of right-to-sue notices on March 15, 1966, the *Muldrow* lawsuit was filed on March 31, 1966. The complaint was dismissed by Judge Lynne on May 15, 1966 for failure to join an indispensable party. An amended complaint was filed on July 15, 1966. The amended complaint was based only on Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and not on 42 U.S.C. § 1981.

3. *Muldrow* was dismissed by Judge Lynne in 1967 on the ground that it had been filed without any conciliation by the EEOC. That ruling was reversed by the Fifth Circuit. *Dent v. St. Louis-San Francisco Railway Co.*, 265 F.Supp. 56 (N.D.Ala. 1967), rev'd, *Muldrow v. H. K. Porter Co.*, 406 F.2d 399 (5th Cir. 1969).

4. The dismissal of *Muldrow* in 1967 set the stage for the filing of suit by the Attorney General on June 23, 1967, based on the same charges on which *Muldrow* was based. *United States v. H. K. Porter Co.*, Civil Action No. 67–L–363–S (herein referred to as the "Attorney General case"). The Attorney General case was tried and decided on the merits by Judge Allgood in 1968. *United States v. H. K. Porter Co.*, 296 F.Supp. 40 (N.D.Ala.1968). An appeal taken by the Attorney General lingered in the Court of Appeals until 1974, when the Company, the Union, and the Attorney General worked out a proposed consent decree, which was approved by the Fifth Circuit on March 19, 1974 [*United States v. H. K. Porter Co.*, 491 F.2d 1105 (5th Cir. 1974)] and was entered by Judge Lynne on March 22, 1974.

5. The settlement of the Attorney General case was followed by a settlement of the *Muldrow* case. The proposed consent decree in *Muldrow* consisted of an in toto adoption of the decree in the Attorney General case which had been approved by the Fifth Circuit and entered by Judge Lynne in 1974, with the addition of a schedule of monetary compensation allocations to members of the class determined to be entitled thereto.

6. The plaintiffs in the present action were among class members who objected to the proposed consent decree in *Muldrow*. Casting their objection in the form of "partial opt-outs", they took the position that they wished to be covered by the decree in all respects except monetary compensation and that as to monetary compensation, they wished to opt-out of the proposed settlement and litigate their monetary claims in the framework of the *Muldrow* litigation. On September 5, 1975, the Court ruled that the objectors could not partially opt-out and pursue their monetary claims in the *Muldrow* case but that they would be permitted to elect to reject the monetary amounts allocated to them by the decree and pursue their claims in a separate action. *Muldrow v. H. K. Porter Co.*, 10 EPD ¶ 10,423 (N.D. Ala.1975).

7. The proposed consent decree in *Muldrow* was approved by the Court by Order entered on September 5, 1975, and the decree itself was signed by the Court on September 9, 1975.

8. An appeal was taken by the objectors from the Orders entered in September 1975. The appeal was withdrawn by the objectors on December 11, 1975.

9. The present action was filed on September 9, 1976 by 35 objectors. The complaint was based on Title VII and § 1981 and alleged that "plaintiffs have filed this individual action, claiming the same rights they intended to pursue under the original action [i. e., the *Muldrow* case]."

10. Subsequent to the filing of this action on September 9, 1976, one of the plaintiffs (Edward Jefferson) filed a separate lawsuit asserting his individual claims on the basis of a charge he filed with the Equal Employment Opportunity Commission. That lawsuit, which was filed on November 29, 1976, is referred to as *Jefferson II* in order to distinguish it from this case, which is referred to as *Jefferson I*. Since *Jefferson II* is a separate and independent action based on claims other than those involved in the *Muldrow* case, it is not affected by the disposition herein of *Jefferson I*.

## ANALYSIS

The present action has been brought for the purpose of pursuing the claims which were the subject of the *Muldrow* case. Except for the objections to the monetary provisions of the decree which are asserted here, the claims which were the subject of the *Muldrow* case were laid to rest by the entry of the decree in *Muldrow* in September of 1975. It is therefore unnecessary to consider all of the grounds on which the defendants' joint motion for summary judgment is based. The determinative issue is whether the present action is time-barred. Analysis of this issue entails separate consideration of the plaintiffs' reliance on § 1981 and on Title VII as the basis for subject matter jurisdiction.

2. No one can now recall the reason for the four day time lapse between the approval of the decree on September 5, 1975 and the signing of the decree on September 9, 1975. The Compa-

*A. § 1981:*

■ Since § 1981 contains no limitations period of its own, the controlling period is "the most appropriate one provided by state law." *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). It is well established that the appropriate limitations period of the forum State for this purpose is the one year statute of limitations provided by § 6–2–39(a)(5), Alabama Code 1975. *Ingram v. Steven Robert Corp.,* 547 F.2d 1260 (5th Cir. 1977); *Buckner v. Goodyear Tire & Rubber Co.,* 339 F.Supp. 1108 (N.D.Ala.1972), aff'd per curiam, 476 F.2d 1287 (5th Cir. 1974).

The plaintiffs contend that the one year statute of limitations was tolled by the pendency of *Muldrow* from 1966 to 1975 and that since this action was filed on September 9, 1976, one year to the day after the signing of the decree on September 9, 1975, it avoided the bar of the one year statute of limitations.

■ The Court agrees with the plaintiffs' computation of the one year period from September 9, 1975 when the decree was signed rather than from September 5, 1975 when the Order approving the decree was entered.[2] However, the plaintiffs' contention that *Muldrow* tolled the running of the statute of limitations until the decree was signed on September 9, 1975 cannot be accepted for two reasons.

[3, 4] In the first place, *Muldrow* could not be viewed as having tolled the statute of limitations applicable to actions under § 1981 because *Muldrow* was not a § 1981 case. The amended complaint, filed on July 15, 1966, was based on Title VII only and contained no reference to § 1981. It is settled law that an amended complaint "supersedes the original complaint and renders it of no legal effect." *International Controls Corp. v. Vesco,* 556 F.2d 665 (9th Cir. 1977), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). As stated in Wright and Miller, *Federal Practice & Procedure* § 1476, pages 389–390 (1971):

ny's attorney suggests it was probably due to the time involved in revising the decree to delete the references to "proposed".

"A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."

It follows that since the plaintiffs in *Muldrow* did not invoke subject matter jurisdiction under § 1981, the pendency of the case could not toll the running of the statute of limitations applicable to § 1981.

■ In the second place, the filing of charges with the EEOC by the *Muldrow* plaintiffs in 1965 could not toll the running of the statute of limitations applicable to § 1981 because the Supreme Court has held that Title VII and § 1981 provide separate and independent causes of action and that the filing of a Title VII claim does not toll the limitations period on a § 1981 claim. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). See also *Jones v. City of San Antonio*, 568 F.2d 1224 (5th Cir. 1978).

It should be said further that the Supreme Court's decision in *Johnson v. Railway Express Agency*, supra, is to be accorded retroactive effect. See *Page v. U. S. Industries*, 556 F.2d 346 (5th Cir. 1977), cert. denied, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). Moreover, since the Supreme Court's decision in *Johnson* was handed down before the plaintiffs were told by this Court in September of 1975 that they could not pursue their claims for monetary compensation in the framework of the *Muldrow* case, there could be and there is no contention that they might have been relying on any authority which existed prior to *Johnson*. See *Williams v. Phil Rich Fan Mfg. Co.*, 552 F.2d 596 (5th Cir. 1977).

The sum of it is that like the plaintiff in *Johnson*, the plaintiffs here have "slept on their § 1981 rights" and that their claims are not maintainable under § 1981 because of the statute of limitations bar.

**B. TITLE VII:**

Consistent with this action having been filed by the plaintiffs to pursue "the same rights they intended to pursue under the original action", the plaintiffs base Title VII jurisdiction on the EEOC charges filed by the *Muldrow* plaintiffs in 1965 and the right-to-sue notices received by the *Muldrow* plaintiffs in 1966. In practical terms, the plaintiffs here are seeking to inherit and carry forward the *Muldrow* Title VII claims.[3]

■ A prerequisite to the maintenance of a Title VII action is the timely filing of the civil action complaint within 90 days after receipt of the EEOC right-to-sue authorization. Section 706(f), 42 U.S.C. § 2000e–5(f). If the complaint is not filed within this period of time, the Court is without jurisdiction. *Pacheco v. Phelps Dodge Refining Corp.*, 531 F.2d 709 (5th Cir. 1976); *Hinton v. CPC International Inc.*, 520 F.2d 1312 (8th Cir. 1975); *Genovese v. Shell Oil Co.*, 488 F.2d 84 (5th Cir. 1973).

In the present case, the right-to-sue notices on which the plaintiffs rely were issued and received by the *Muldrow* plaintiffs in 1966, more than 10 years before the plaintiffs filed this lawsuit in 1976. The plaintiffs therefore seek to avoid the bar of the 90 day time limitation by arguing that the time for their filing of this action as a Title VII suit was tolled during the pendency of the *Muldrow* case.

Any analysis of the application of a statute of limitations to members of a class in a class action lawsuit should begin with *American Pipe and Construction Co. v. State of Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), in which the Court held that the statute of limitations in a class action antitrust suit was tolled during the period the District Court considered the propriety of class action certification.

It is doubtful that *American Pipe* provides authority for the tolling of a limitations period in the context of the facts here,

---

**3.** The plaintiffs also suggest that they rely on a charge filed in 1970 by plaintiff Edward Jefferson. However, the complaint contains no reference to any such theory, and in any event, Mr. Jefferson's charge has become the basis for his own separate lawsuit. (*Jefferson II*).

because the principle established by the decision is intended for the benefit of class members who seek to intervene in an action after class status is denied. See *Stull v. Bayard*, 561 F.2d 429 (2nd Cir. 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774 (2nd Cir. 1977); *Wachovia Bank & Trust Co. v. National Student Marketing Corp.*, 461 F.Supp. 999 (D.D.C.1978). See also 3B *Moore's Federal Practice* ¶ 23.90[3], n. 16 ("Although the statute of limitations is tolled by the filing of a class action for purposes of permitting a member of the purported class to intervene after the class has been disallowed, it is doubtful that a class member will be permitted to bring an individual action after the statute of limitations has run."). In contrast, the plaintiffs in this case are not intervenors but are class members who chose to opt out of an existing class action.

█ In any event, even if it is assumed arguendo that the limitations period of Title VII was tolled from 1966 to 1975 by the pendency of *Muldrow*, that tolling would be of no benefit to the plaintiffs. As *American Pipe* itself illustrates, any tolling of a statute of limitations ceases when the class members are excluded from the lawsuit.[4] In the present case, if the Title VII limitations period was tolled from 1966 to 1975 by the pendency of *Muldrow*, it began running against the plaintiffs in September of 1975 when the decree was entered, and the filing of this lawsuit a year later in September of 1976 was indisputably outside that time limitation.

Similarly, it could not be said that the appeal taken by the plaintiffs (in their then role as objectors) might have continued the tolling period for a period of time sufficient to make this action timely. The appeal was withdrawn in December of 1975, so if the computation of Title VII's time limitation were computed from that time, it would

have expired long before this action was filed in September of 1976.

The plaintiffs further contend that this Court erred in holding in September of 1975 that they could not pursue their monetary claims through the vehicle of the *Muldrow* case and that they should be treated now as if they had been permitted to do so. As expressed in the plaintiffs' brief, "They would have been allowed to use these charges in the *Muldrow* suit and, therefore, they should be allowed to use those charges in the present *Jefferson* suit." (Plaintiffs' brief, page 6). The plaintiffs rely in support of this theory on *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ("*Pettway IV*"), in which the Court stated that "in Rule 23(b)(2) class actions the district court may not require members of the back pay subclass to either accept their award or opt-out of the class suit altogether. At most, awardees may be permitted to opt-out of a subclass, while remaining in the class to pursue their individual claims in the same suit." (576 F.2d at 1182, n. 27).

█ In the interest of complete analysis, it should initially be observed that there is considerable reason to doubt that *Pettway IV* was intended to establish any requirement that class members dissatisfied with monetary allocations under a proposed settlement must be permitted to pursue their claims for higher compensation in the same lawsuit. The case came before the Court of Appeals in the context of a court-approved settlement which required dissatisfied class members to litigate their claims in separate actions. Read in context, the Court of Appeals' disapproval of that procedure was a holding that where the parties agree as part of a settlement to provide a procedure by which dissatisfied class members may pursue their claims, it must be provided in the framework of the same case. See *Cotton v.*

---

4. When the plaintiffs in *American Pipe* were excluded from the lawsuit, there were 11 days remaining before the statute of limitations expired, and the Court noted that the plaintiffs had filed before the expiration of that period. See also *Burnett v. New York Central Co.*, 380

U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), in which the statute was tolled on an FELA action from the time of the commencement of a State court action until the State court order dismissing the action became final.

*Hinton,* 559 F.2d 1326 (5th Cir. 1977) ("In the case *sub judice,* the consent decree itself provides for opting out and we find nothing objectionable in that agreement between the parties."). Any proposition that dissatisfied class members must be given a right to continue a settled class action case for the purpose of pursuing higher monetary compensation would clearly be at odds with the concept that a consent decree is by its very nature consensual. Compare *High v. Braniff Airways,* 592 F.2d 1330 (5th Cir. 1979), in which the Court of Appeals held that a part of a consent decree which had not been agreed to by one of the parties could not be imposed by the District Court on a non-consensual basis.

■ For these reasons, the logical view of *Pettway IV* is that the parties to a proposed class action settlement may provide for a procedure by which class members may reject the monetary amounts allocated to them and litigate their entitlement to higher amounts in the same action, and that a Court may in appropriate cases conclude that a proposed decree should be disapproved unless the parties agree to such a procedure.

No such situation existed here. In this case, the Court concluded in September of 1975 that the proposed decree was fair and reasonable and that it was due to be approved over the objections voiced by the objectors (including the present plaintiffs) to the monetary provisions of the decree. Indeed, in retrospect, it has turned out that the class in all probability achieved more by the decree than could have been achieved by litigation, because the Supreme Court's decision in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) substantially undercut the plaintiffs' position in *Muldrow* regarding the seniority system. Compare *Coleman v. Seaboard Coast Line R. Co.,* 18 EPD ¶ 8812 (E.D.Va.1978) ("Should the instant suit proceed to trial, Plaintiff could avoid § 703(h) and *Teamsters* only if he could establish that the seniority system was instituted and maintained for a discriminatory purpose and

thus was not bona fide.—Disapproval [of the settlement] would necessitate extensive further litigation, impose a formidable burden of proof upon Plaintiff and jeopardize the relief obtained in settlement.").

When the Court reached the conclusion in September of 1975 that the decree was due to be approved, the plaintiffs here could have elected to accept the decree. They did not do so and instead elected to institute this lawsuit a year later. On these facts, the Court does not believe *Pettway IV* supports their position that they should now be treated as if they were pursuing their claims for monetary compensation in the *Muldrow* case.

■ In any event, the conclusive answer to the plaintiffs' contention is that if they considered the Court to have been in error in September of 1975 in approving the decree over their objection or in holding that they could not use *Muldrow* as the vehicle for continued litigation, the proper course of action would have been to take the case to the Court of Appeals. Having withdrawn their appeal, the plaintiffs' disagreement with the Court's rulings in 1975 has been relinquished.

■ The plaintiffs also argue that it would be unfair to deny them their day in court. As deeply as this Court is committed to the right of citizens to a hearing on their claims, the Court must at the same time respect the fundamental principles that equitable considerations cannot confer jurisdiction where none exists or breathe life into time-barred claims. Limitations periods "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble,* 332 U.S. 535, 68 S.Ct. 235, 92 L.Ed. 150 (1947). Moreover, the facts are that these plaintiffs, represented by highly able and experienced counsel, made their choice in 1975 to take the risk of rejecting the decree and instituting this action in the hope of obtaining monetary amounts more to their liking. That the gamble did not pay off is no fault of their attorney, who has advanced every conceivable argument which might have

been asserted, but rather to the plaintiffs' own voluntary election.

## CONCLUSION

For the reasons set forth above, the Court is of the opinion that there is no genuine issue as to any material fact and that on the undisputed facts, this action is barred by time limitations and that the defendants are therefore entitled to judgment as a matter of law.

On Motion To Alter or Amend Findings.

This cause came before the court on motion of plaintiffs to alter or amend the court's findings entered on February 7, 1980. Having considered the motion, the court is of the opinion it should be granted in part and denied in part. As to plaintiffs' request to alter the court's finding under Undisputed Facts, Paragraph 6, Page 3, to show that plaintiffs did not ask for a "partial opt-out," the court is of the opinion that "partial opt-out" is the correct term and plaintiffs' motion is due to be denied in that respect. The court is of the further opinion that plaintiffs' request to add certain findings is due to be granted. Accordingly, it is

ORDERED, ADJUDGED and DECREED that plaintiffs' motion to alter the court's finding as to "partial opt-out" be and it hereby is denied; and it is

FURTHER ORDERED, ADJUDGED and DECREED that plaintiffs' motion to add certain findings be and it hereby is GRANTED, and the following findings are hereby ADDED to the court's findings of February 7, 1980:

1. The District Court refused to certify *Muldrow* prior to settlement as a class action.

2. There were over 300 people involved in the settlement.

In all other respects this court's findings entered February 7, 1980, are hereby RATIFIED and REAFFIRMED in their entirety.