**Edward FRITZ, Plaintiff-Appellee,**

**v.**

**STANDARD SECURITY LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Appellant.**

**No. 80–5859.**

United States Court of Appeals, Eleventh Circuit.

May 24, 1982.

Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, P. A., R. Owen Ricker, Jr., Miami, Fla., Rein, Mound & Cotton, Seymour J. Ugelon, New York City, Patricia H. Thompson, Miami, Fla., for defendant-appellant.

Greene & Cooper, P. A., Marc Cooper, Robyn Greene, Miami, Fla., Rein, Mound & Cotton, P. A., New York City, for plaintiff-appellee.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff, Edward Fritz, filed this diversity action against Standard Security Life Insurance Company of New York (Standard) alleging that Standard wrongfully terminated his insurance benefits. Plaintiff obtained a judgment for $23,533.18 and defendant appeals. We affirm.

Fritz, a chef and caterer, procured two insurance policies from Standard. Each policy provided for the payment of $500 per month in the event that the insured party became disabled from his regular occupation. In May 1978, plaintiff lacerated four fingers on his right hand while boning chicken. The nerves and tendons in two fingers were completely severed and required microscopic surgery to repair. Fritz underwent a second operation on the nerves and tendons in order to increase the range of mobility in his fingers. The injury left plaintiff unable to lift heavy objects or handle a knife. As a result, he could no longer perform the duties required by his regular occupation.

In accordance with the terms of the policies, Standard commenced the payment of benefits shortly after the accident. The insurance company, however, requested that the plaintiff be examined by a physician for a disability determination. Based upon that physician's report, Standard concluded that the plaintiff was no longer disabled and terminated the benefits. Plaintiff filed suit, seeking a resumption of the benefit payments. The jury determined that plaintiff was disabled and the trial judge awarded plaintiff all payments that had accrued through the date of trial.

### I.

Standard first contends that the district court improperly charged the jury concerning the "care and attendance" clauses in the insurance policies.[1] The clauses state that a policyholder will not be considered disabled unless under the "care and attendance" of a physician. The district court charged the jury that the clauses need not be given effect if the evidence established that the injury had reached the maximum improvement and would not respond to further treatment.[2]

In construing the language of the insurance policies, we are bound by the substantive law of the State of Florida. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Continental Casualty Co.*, 497 F.2d 1015 (5th Cir. 1974). The Florida Supreme Court has not determined whether the factfinder can disregard

---

1. The insurance policies read in pertinent part:

   TOTAL DISABILITY means Your complete and continuous inability to engage in Your regular occupation because of Sickness or Injury. Total Disability shall not be deemed to exist during any period which you are not under the regular care and attendance of a Doctor.

2. Plaintiff apparently ceased receiving treatment for the injury in December 1978, seven months after the accident occurred. His treating physician testified, however, that the injury was permanent and would not respond to additional treatment.

a "care and attendance" clause upon a showing that additional treatment is useless. In the absence of controlling state precedent, we must discern how the Florida Supreme Court would rule if presented with the issue. *Nobs Chemical, U. S. A., Inc. v. Koppers Co.*, 616 F.2d 212, 213 (5th Cir. 1980); *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973).

■ The definite trend in Florida case law has been towards a liberal interpretation of "care and attendance" clauses. In *Mutual Ben. Health & Acc. Ass'n v. Bunting*, 133 Fla. 646, 183 So. 321, 327 (1938), the Florida Supreme Court refused to enforce the literal language of a "care and attendance" clause. Further, in *Lorber v. Aetna Life Ins. Co.*, 207 So.2d 305 (Fla.App.), *cert. denied*, 212 So.2d 876 (Fla.1968), the court interpreted the clause in an exceedingly broad fashion in order to permit the policyholder to recover benefits. Moreover, we note that the prevailing rule in other jurisdictions has been to reject the application of the clause where the evidence indicates that further care would be of no benefit. *Russell v. Prudential Ins. Co.*, 437 F.2d 602, 607 (5th Cir. 1971); *Dixon v. Pacific Mut. Life Ins. Co.*, 268 F.2d 812, 816 (2d Cir.), *cert. denied*, 361 U.S. 948, 80 S.Ct. 403, 4 L.Ed.2d 381 (1959); J. Appleman, Insurance Law and Practice § 655, at 274 (rev.ed.1981) ("Where medical treatment is useless, the courts have held that such a provision of the contract is thereby excused, since the law does not require the doing of a useless thing."). *See also* 84 A.L.R.2d 375 (1962). In light of the Florida precedent and the clear weight of authority in other jurisdictions, we conclude that the Florida Supreme Court would not require the factfinder to enforce a "care and attendance" clause if

continued treatment would be useless. Accordingly, we find no error in the district court's instruction.

## II.

■ Standard next asserts that the district court erred in awarding plaintiff insurance payments that accrued after the initiation of the lawsuit and up to the time of the trial. Under Florida law, recovery is generally limited to payments due at the time plaintiff files his complaint.[3] *Mutual Life Ins. Co. v. Knight*, 130 Fla. 733, 178 So. 898, 906 (1937); *Aetna Life Ins. Co. v. Smith*, 345 So.2d 784, 787 (Fla.App.), *cert. denied*, 353 So.2d 678 (Fla.1977). Plaintiff, however, with leave of the court amended his complaint shortly before trial to include a claim for additional insurance payments. Under the Federal Rules, an amended complaint supersedes the original complaint. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981); *Jefferson v. H. K. Porter Co.*, 485 F.Supp. 356, 359 (N.D.Ala. 1980), *aff'd*, 648 F.2d 337 (5th Cir. 1981); *accord*, C. Wright & A. Miller, 6 Federal Practice and Procedure § 1476, at 389–90 (1971). Since the original complaint had been superseded, the district court correctly awarded plaintiff the insurance payments that had accrued through the date of the amended complaint. *King v. Mutual Life Ins. Co.*, 114 F.Supp. 700, 702 (E.D.Tenn. 1953) (recovery under disability insurance policy includes payments that accrued on date of amended complaint).[4]

## III.

Finally, Standard contends that the judgment should have been reduced in accordance with the vocational restoration provision found in each policy.[5] Under the pro-

---

**3.** A policyholder may obtain damages over the remaining life of the insurance policy where the insurer repudiates the entire contract. *Aetna Life Ins. Co. v. Smith, supra*, 345 So.2d at 787. Plaintiff has not, however, alleged on appeal that Standard has repudiated the insurance policy.

**4.** A policyholder may also obtain insurance payments that accrued through the date of trial by filing a supplemental pleading. Fed.R.Civ.P. 15(d); *Dixon v. Pacific Mutual Life Ins. Co., supra*, 268 F.2d at 817.

**5.** The vocational restoration provision states in pertinent part:

If Your Total Disability (whether caused by Injury or Sickness) continues after twenty-four (24) Monthly Benefit payments have been paid for such Total Disability and if You perform any work or service other than Your regular occupation, Monthly Benefits will still be payable during such Total Disability up to the applicable Maximum Period. However, if, as a result of such work or service, You earn in any month more than 50% of the applicable Monthly Benefit shown on page 3

vision, a policyholder could continue to receive benefits even while performing "work or service" at another occupation. The insurance benefits, however, were to be reduced by a fraction of the income earned at the other occupation if the income exceeded 50% of the monthly payments. Standard failed to establish that plaintiff earned in any month more than 50% of the applicable monthly benefits payable under the two policies.

Plaintiff's testimony constituted the only evidence in the record concerning his monthly income. He acknowledged earning from his new employment about $500 per month. Plaintiff indicated, however, that he was uncertain about the precise amount of his income. Further, he received his income in Israeli pounds and expressed some doubt about his ability to convert the currency into American dollars. Thus we cannot say that Standard established with any degree of certainty the amount of plaintiff's monthly income from his new employment. We conclude, therefore, that Standard did not present evidence sufficient to justify the invocation of the vocational restoration provision.

### IV.

Plaintiff has moved the Court for an award of attorneys' fees incurred in the preparation and prosecution of the appeal. Under Florida law, an insured party that obtains a judgment against an insurer is entitled to attorneys' fees for both trial and appellate work. Fla.Stat. § 627.428; *Meeks v. State Farm Mut. Auto Ins. Co.*, 460 F.2d 776, 781 (5th Cir. 1972). The right to attorneys' fees applies in Florida diversity cases. *Blasser Bros., Inc. v. Northern Pan-American Line*, 628 F.2d 376, 386 (5th Cir. 1980). We therefore remand to the district court with instructions to award plaintiff reasonable attorneys' fees for this appeal.

The judgment of the district court is AFFIRMED.

[$500], the Monthly Benefit payable for that month will be automatically reduced by an amount equal to 50% of Your excess earn-

ings over 50% of the applicable Monthly Benefit shown on page 3 [$500].