**FEDERAL DEPOSIT INSURANCE CORP., In Its Corporate Capacity, Plaintiff,**

v.

**Joseph H. AMBERSON, Defendant.**

**No. SA–86–CA–1518.**

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 19, 1987.

Frederick C. Shannon, Jr., Martin, Shannon & Drought, Inc., San Antonio, Tex., for plaintiff.

Robert Michael Kunczt, San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

H.F. GARCIA, District Judge.

This lawsuit was commenced in state district court by the First National Bank of Bandera (Bank) against Joseph H. Amberson to collect money owed on three promissory notes and on a separate guaranty agreement executed by Amberson. Subsequently, the Bank was declared insolvent and its assets and affairs were placed under the control of the Federal Deposit Insurance Corporation (FDIC) as receiver. In its corporate capacity, the FDIC purchased from the receiver certain assets of the Bank, including the notes and guaranty which were the subject of the state court lawsuit. After seeking and being granted leave to substitute as plaintiff, the FDIC removed the case to this Court pursuant to 12 U.S.C. Section 1819 (Fourth).

An amended complaint was filed alleging Amberson's execution and default in the payment of: (1) a promissory note dated April 10, 1985 in the sum of $85,407.62, which constituted the consolidation and renewal of the three prior notes, and (2) a guaranty agreement dated June 24, 1983 guaranteeing the payment of a promissory note in the amount of $149,000 executed by Bandee Corporation, Inc. (Bandee). In his amended answer and deposition, Amberson admits that he executed the guaranty agreement and the promissory note but alleges: (1) that the FDIC is estopped from asserting its claim under the guaranty agreement because Amberson believes the FDIC knew of the defenses he had against the Bank in the state case, and (2) that the consideration for the guaranty agreement failed because it was delivered to the Bank with the understanding the Bank would obtain additional security for the Bandee note, which additional security the Bank failed to obtain.[1] Amberson does not contest his liability on the promissory note. The FDIC has now moved for entry of summary judgment.

### SECTION 1823(e)

Both Congress and the federal courts have recognized the paramount importance of the FDIC in stabilizing and protecting the nation's banking system. *FDIC v. Langley*, 792 F.2d 541, 544 (5th Cir.1986). Thus, the Supreme Court, as a matter of federal common law, held that the maker of a promissory note is estopped from asserting against the FDIC that the maker and the failed bank agreed not to call the note for repayment. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Following *D'Oench* Congress enacted 12 U.S.C. Section 1823(e) which invalidates any agreement tending to diminish or defeat the right, title or interest of the FDIC in any asset acquired by it, unless the agreement meets certain enumerated prerequisites. At least one of the

---

1. In his first amended answer in state court, while the Bank was still plaintiff, Amberson filed a counterclaim for fraudulent misrepresentation and under the Texas Deceptive Trade Practices Act relying upon the same facts which form the basis for his affirmative defenses here, i.e., failure to provide additional security. This counterclaim does not appear in the amended answer he filed in federal court on June 15, 1987, and has, thus, been voluntarily dismissed. *See, Wilson v. First Houston Investment Corp.*, 566 F.2d 1235, 1237–1238 (5th Cir.1978). *Jefferson v. H.K. Porter Co.*, 485 F.Supp. 356, 359 (N.D.Ala.1980). Even if the counterclaim remained in the pleadings, it would not be viable for the same reasons, to be stated below, that the affirmative defenses are ineffective.

several beneficial purposes underlying section 1823(e) is to ensure that the FDIC may rely on the books and records of an insured institution by requiring that material agreements concerning a loan transaction be set forth in the bank's records. *Langley,* 792 F.2d at 544. The common thread running through the cases applying section 1823(e) to bar a defense has been the assertion by the obligor that an oral side agreement with the bank controlled the rights of the parties. *FDIC v. Castle,* 781 F.2d 1101, 1106–1107 (5th Cir.1986).

■ An "understanding" between the Bank and Amberson, that the Bank would obtain additional security for the Bandee note, would fall clearly within the proscription of section 1823(e). Such an agreement reduces the value of the guaranty agreement and, by its nature, tends to mislead the FDIC. *Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355, 361–362 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). In his response to the motion for summary judgment, Amberson denies the existence of any secret side agreement and asserts that letters from the Bank's officers to the Bank's attorney, copies of which were sent to Amberson, evidence the agreement by the Bank to obtain additional security for the Bandee note. Amberson's affidavit alleges that the Bank agreed: (1) to acquire security in stock of Bandee, TVUS, Inc. and ENGAS, Inc., and (2) to obtain a transfer of an interest in a land contract, purportedly held by Bandee. As evidence of this agreement, Amberson refers to the Bandee note and to a letter of August 15, 1983 from the Bank president Terry Morrow to James R. Gibson, both of which instruments are attached to the summary judgment motion.

Amberson's summary judgment response does not preclude the applicability of section 1823(e). The letters from the Bank's officers to the Bank's attorney, referred to in the response only, have not been submitted as summary judgment proof. Un-

der Rule 56(e), Fed.R.Civ.P., mere allegations or denials in the pleadings are not a sufficient response to a summary judgment motion which is prima facie meritorious; an evidentiary response is necessary. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553–2554, 91 L.Ed.2d 265 (1986).[2] The August 15th letter and the note itself do indicate that the note was to be additionally secured by shares of stock in the above-mentioned corporations. Since this provision was included in the note itself, 1823(e) would seem to be inapplicable. However, the real question is not whether the shares of stock were intended to serve as additional security for the Bandee note, for most certainly they were, but rather whether Amberson agreed to guarantee the note only on the condition that this additional security existed. This agreement is covered by section 1823(e).

It must be remembered that because of the unique function served by the FDIC, it must be able to rely on the Bank's books and records in deciding whether to purchase a particular asset. The circumstances existing at that time must, therefore, be viewed through the eyes of the FDIC. When the FDIC examined the Bank's records it could determine that the shares of stock were intended as additional security and it perhaps even knew that the Bank never obtained this security. More importantly, however, it could see a valid guaranty agreement which did secure the note and which, on its face, was unconditionally executed. The guaranty agreement recites that the indebtedness is being unconditionally guaranteed. It also states that the Bank can, without the guarantor's consent, deal in any manner with property pledged or mortgaged to secure the note. It further provides that the guarantor waives any right to require the Bank to proceed against or exhaust any security held from the borrower. Thus, regardless of Amberson's belief that the shares of stock could have served to reduce the indebtedness, the guaranty he signed makes him liable for

---

**2.** Although Amberson has filed a motion to compel the production of documents, he has not alleged that any of these documents constitute evidence necessary for him to respond to the FDIC summary judgment motion. In view of the Court's disposition of that motion, the discovery motion shall not be ruled on.

the full amount of the note without requiring the Bank to first look to other security. Nothing in the Bank's records establish the existence of an agreement to the effect that Amberson's guaranty was conditional and would be effective only if the additional security was obtained and executed upon. Section 1823(e) and *D'Oench* preclude the assertion that the failure by the Bank to obtain the stock caused the guaranty agreement to fail for lack of consideration. *See, FDIC v. Gardner*, 606 F.Supp. 1484, 1488–1489 (S.D.Miss.1985). Since the uncontroverted documents demonstrate that the guaranty did exist and that the note was made with consideration, summary judgment is proper. *Public Loan Co. v. FDIC*, 803 F.2d 82 (3rd Cir.1986).

Amberson also alleged in his amended answer and in his affidavit that additional security in the form of an interest in a land contract was to also be obtained. No summary judgment evidence reflects the Bank's agreement to obtain this security or indicates that the Bank agreed to accept Amberson's guaranty only on the condition that such security would be obtained. The only document in the Bank's records which the FDIC could examine, which concerned the terms of the guaranty, was the guaranty itself. By its terms, as noted above, it is unconditional and imposed liability on Amberson regardless of any other security. Section 1823(e) and *D'Oench* preclude Amberson's assertion that the failure to obtain additional security constitutes a defense to the claim of the FDIC on the guaranty agreement.

### FRAUDULENT INDUCEMENT

■ Although not pled as a defense, Amberson alleges in his deposition that several representations were made to him which induced him to sign the guaranty agreement: (1) that Morrow had the full agreement of Jim Gibson, president of Bandee Corporation, on this transaction; (2) that Morrow would have full and complete and unquestioned control of Bandee Corporation; (3) that Carl Gibson, who had a liquid net worth of some amount, was also a guarantor; and (4) that the income from the production of some oil wells would also

be used as security. In determining whether section 1823(e) is applicable, courts have distinguished between two types of fraud in the inducement: (1) promissory fraud—an oral promise by the bank to perform a duty in connection with the execution of a note that the bank does not intend to perform—which cannot be asserted against the FDIC; and (2) factual fraud—a factual misrepresentation by the bank not involving the undertaking of any contractual duty—which can be asserted against the FDIC. *See, Langley*, 792 F.2d at 546. *FDIC v. Hatmaker*, 756 F.2d 34, 36–37 (6th Cir.1985). *Gunter v. Hutcheson*, 674 F.2d 862, 867 (11th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1983). Section 1823(e) bars a promissory fraud defense, but not a fatual fraud defense.

This Court believes that the misrepresentations alleged constitute promissory fraud. Each one refers to the existence of security, in addition to Amberson's guaranty, to secure payment of the Bandee note. Jim Gibson's agreement to the transaction was necessary to obtain the additional security. Carl Gibson's guaranty and the oil well production income, like the shares of stock and the interest in the land contract, would have also secured payment of the note, as would control of Bandee. However, as noted above, the existence vel non of additional security has no bearing on Amberson's liability as a guarantor. The Bank records reflect none of the agreements which form the basis of Amberson's claim of misrepresentation. The FDIC had no reason to believe, at the time it purchased the Bandee note, that Amberson's guaranty was in any way conditional or that any of these agreements existed. As in *Langley*, Amberson's defenses emanate from these alleged agreements which, having the effect of misinforming the FDIC, are barred by section 1823(e).

Even assuming any of the alleged misrepresentations could constitute factual fraud, they cannot serve as a defense. To establish fraudulent inducement under Texas law, the following elements must be shown: (1) a material representation, (2) that is false, (3) that was made with knowl-

edge of its falsity or recklessly without any knowledge of its truth and as a positive assertion, (4) that was made with the intention that it be acted upon by the party, (5) that the party act in reliance upon it, and (6) that he thereby suffered injuries. *FDIC v. Eagle Properties, Ltd.*, 664 F.Supp. 1027, 1038 (W.D.Tex.1985). Amberson has offered no summary judgment proof as to the third and fourth elements, and has not even alleged that they could be satisfied. This reason alone negates the need to examine the viability of FDIC's statutory protection. *FDIC v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir.1981).

■ Assuming Amberson's fraud claim was viable under state law, federal common law protects the FDIC. The FDIC has a complete defense to a fraud claim on a note acquired by it for value, in good faith, and without actual knowledge of the fraud at the time it purchased the asset. *Gunter*, 674 F.2d at 873. *See, FDIC v. Leach*, 772 F.2d 1262, 1267 (6th Cir.1985). *FDIC v. Gulf Life Insurance Co.*, 737 F.2d 1513, 1518 (11th Cir.1984). Amberson has alleged but failed to offer any evidence that the FDIC had knowledge of his fraud defense at the time it purchased the Bandee note; summary judgment is, therefore, proper. *See, FDIC v. Armstrong*, 784 F.2d 741, 745 (6th Cir.1986).

## CONCLUSION

Amberson has raised no defense to the collection of the April, 1985 note he executed, and has not contested the motion for summary judgment as it pertains to that note. His claims that the guaranty agreement is unenforceable because of fraud and lack of consideration, are barred by section 1823(e). Assuming his misrepresentation assertion refers to factual fraud, as opposed to promissory fraud, it fails under state law and, because the FDIC purchased the Bandee note without knowledge of any fraud, under federal common law. Amberson's failure to make a showing sufficient to establish the existence of essential elements of his defenses justifies the entry of summary judgment. *See, Celotex Corp. v. Catrett.*

Judgment shall be entered granting all relief requested by the FDIC, including monetary damages and foreclosure upon any secured property. Although the FDIC has sought attorneys' fees, the Court believes that the affidavit of counsel which has been submitted is insufficient to permit an award. Counsel for the FDIC should submit a brief within ten days analyzing the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) within the framework discussed in *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087 (5th Cir.1982). Amberson shall have ten days thereafter to file his response. Counsel for the FDIC should also submit a proposed judgment.

It is, therefore, ORDERED that the motion of the FDIC for summary judgment be, and it hereby is, GRANTED.