UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DEIDRA MIDDLEBROOKS,
Plaintiff-Appellant,

v.

UNIVERSITY OF MARYLAND, at

College Park; LIN CHAO, Ph.D.;
JEFFREY M. COOPER, Ph.D.; BRUCE L.
GOLDEN; JAMES A. SCHAFER, Ph.D.;
WOLFGANG H. STEPHAN, Ph.D.,
Defendants-Appellees.

No. 97-2473

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams Jr., District Judge.
(CA-96-1144-AW)

Argued: October 29, 1998

Decided: January 11, 1999

Before WIDENER and MURNAGHAN, Circuit Judges, and
WILSON, Chief United States District Judge
for the Western District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Lisa Alexis Jones, LAW OFFICE OF LISA ALEXIS
JONES, Washington, D.C., for Appellant. Anne Love Donahue,

Assistant Attorney General, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Deidra Middlebrooks, an African-American woman, sued the University of Maryland, College Park and five of its faculty for race and gender discrimination, following her dismissal from the University for failing to satisfy the academic requirements of the Ph.D. Program in Applied Mathematics. Middlebrooks filed a <u>pro se</u> Complaint in the United States District Court for the District of Maryland, Southern Division, construed by that court to contain claims under 20 U.S.C. § 1681 (1994) (Title IX); 42 U.S.C. § 2000d (1994) (Title VI); and 42 U.S.C. § 1983 (1994). Plaintiff, represented by counsel, filed an Amended Complaint[1] that contained four distinct counts, including allegations of violations of Title IX, Title VI, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The district court granted Defendants' Motion for Summary Judgment, from which Plaintiff now appeals. We affirm the district court ruling.

I.

Middlebrooks entered the University of Maryland, College Park in the fall of 1992. She was enrolled in the Ph.D. Program in Applied Mathematics ("Program"). Defendant Jeffrey Cooper was the director of the Program until shortly before Middlebrooks left the University. He did not teach Middlebrooks in any course. Defendant James

_____

[1] A second Amended Complaint was filed, which added some factual allegations but no new causes of action.

Schafer is a mathematics faculty member who taught her in two courses. Defendants Wolfgang Stephan and Lin Chao are two faculty members in the Zoology Department who graded Middlebrooks' Zoology qualifying examination, and Defendant Bruce Golden is a faculty member in the School of Business and Management who taught her in one course and graded one part of one qualifying exam.

The Ph.D. Program consists of three components: course work, for which the student must maintain a certain grade point average; comprehensive, or qualifying, examinations, which must be passed in three subject areas; and a dissertation, which can begin after the other two components have been completed successfully. Plaintiff performed her course work with the requisite grade point average and was dismissed before she was permitted to begin work on her dissertation because she failed to pass any qualifying exams.

In the Ph.D. Program, students are required to take exams in three subject areas. At least one exam must be taken in a math area and at least one must be taken in a different subject to which math can be applied. The third exam can be taken either in math or in an applied field. Candidates must pass two exams by the end of their third year and the third by the end of their fourth year.

Middlebrooks began her course work in the fall of 1992. During the spring of 1994, Middlebrooks complained that a graduate student, acting as a grader in a math class in which Plaintiff was enrolled, inappropriately revealed a score that Plaintiff received on a test in the course. The University responded to the incident by advising all graduate teaching students of their obligations to protect privacy with respect to grades.

In the fall of 1994, Middlebrooks complained about Defendant Schafer's conduct in a math class that she took during the fifth semester of her enrollment in the Program. Dr. Schafer had not wanted Middlebrooks to enroll in his advanced algebra class. Dr. Schafer testified that she was not as prepared as the other students for the class; she had not taken the more basic mathematics course; she had not passed the qualifying exam in Algebra as most of the other students had; and she did not attempt to enroll in the class until two or three weeks after classes had begun. Plaintiff maintains that once she enrolled in the

3

class, Schafer informed the entire class that he was changing the format and grading structure because Middlebrooks had now enrolled. Middlebrooks received a final grade of B in the class; each of her classmates received a final grade of A.

Shortly before her termination, in the spring of 1995, Middlebrooks also complained that Defendant Stephan, who is German, had a slogan posted on his door which read "Cool European Dude." She testified, however, that she never heard him make a disparaging remark about women or African-Americans.

Later that spring, Plaintiff complained about conditions under which she took the qualifying exam in Zoology, including factors that she considered to be different from the experience of a white, male student who had taken the exam. Defendants maintain that the white, male student was tested differently because he had already passed the Zoology exam at least twice but had to re-take it since, at the time, students in the Ph.D. Program were required to pass all of their exams in one sitting.

Middlebrooks began taking qualifying exams in August of 1994, before the beginning of her third year in the Program. She took ten exams between August 1994 and August 1995. She failed all of the exams. As a result, she did not satisfy the Program requirement that she pass two qualifying exams by the end of her third year in order to continue as a Ph.D. candidate. In the fall of 1995, Plaintiff was dismissed from the Program.

Following her dismissal, Middlebrooks sued the University and the five faculty members for race and gender discrimination under four federal statutes: Title IX; Title VI; § 1981; and § 1983. After the completion of discovery, Defendants filed a Motion for Summary Judgment seeking judgment on all counts for all Defendants. The court granted Defendants' Motion for Summary Judgment, finding that Plaintiff failed to make a prima facie case of race or gender discrimination because she did not demonstrate that she was qualified to remain a candidate in the Ph.D. Program. The court also ruled that Plaintiff's hostile environment claim, alleged in opposition to Defendants' Motion for Summary Judgment, was both untimely and did not evidence severe or pervasive racial hostility.

II.

A. Timeliness of Hostile Environment Claim

The district court ruled that, by failing to plead a claim of hostile environment before her opposition to Defendants' Motion for Summary Judgment, Plaintiff asserted her claim too late in the proceedings. Plaintiff-Appellant challenges that determination as erroneous. We believe the district court was correct in its assessment.

All pleadings setting forth claims of relief must include "a short and plain statement" of the claim demonstrating that the claimant is entitled to relief. Fed. R. Civ. P. 8(a)(2). A claimant need not set out in detail the facts upon which the claim for relief is based but must provide a statement sufficient to put the opposing party on fair notice of the claim. See Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 568 n.15 (1987).

Appellant insists that her pro se Complaint clearly asserted a hostile environment theory. In the Complaint, Middlebrooks alleged that her alleged mistreatment by University officials resulted in a "hostile" learning environment "... in which it was impossible to learn." Additionally, in her response to Defendants' request for a more definite statement, Plaintiff charged that Defendants' conduct had "created a hostile environment." In her first and second Amended Complaints, however, there is no mention of a "hostile" learning environment. Her amended pleading supersedes the original pleading and remains in effect throughout the action, unless it is subsequently modified. See Fritz v. Standard Security Life Insurance Company of New York, 676 F.2d 1356, 1358 (11th Cir. 1982); Bullen v. De Bretteville, 239 F.2d 824, 833 (9th Cir.), cert. denied, 353 U.S. 947 (1956); accord Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d, § 1476 at 556 (1990). Once an amended pleading is filed, the original pleading no longer performs any function in the case. Consequently, it cannot be used to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading. See Bullen, 239 F.2d at 833; Wright, et al., supra, § 1476, at 557, 559.

Middlebrooks' initial pleading, by virtue of filing her Amended Complaints, is no longer viable. So, the question becomes whether

5

Plaintiff's Amended Complaints properly plead her claim of hostile environment. The federal pleading rules require that the complaint give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). By Plaintiff's own admission, the Amended Complaints merely state that Defendants "were responsible for teaching students, including Plaintiff, in a nondiscriminatory environment." Otherwise, each claim alleges, in one form or another, "disparate" treatment. To the extent that the initial pleading set forth a claim of hostile environment, Middlebrooks abandoned it by failing to include it in her subsequent filing. Under the circumstances, Defendants reasonably concluded that Plaintiff's claims were based on allegations of disparate treatment only and not hostile environment. Consideration of the hostile environment claim for the first time at the summary judgment stage would require the gathering and analysis of facts not already considered by the opposing party. Therefore, we conclude that Defendants were afforded inadequate notice of Plaintiff's claim of hostile environment. The district court properly determined that the claim was untimely raised.

B. Grant of Summary Judgment Against Plaintiff

Plaintiff Middlebrooks brought claims of race and gender discrimination under Title IX,[2] Title VI,[3] § 1981,[4] and § 1983.[5] Granting

_____

[2] Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a).

[3] Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[4] Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a).

[5] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulations, custom, or usage, of any State or Terri-

Defendants' Motion for Summary Judgment, the district court determined that Plaintiff had failed to make a prima facie case for race or gender discrimination under any of the claims. We review the district court determination <u>de novo</u>.

In evaluating a summary judgment motion, the Court of Appeals must apply the same legal standards as the district court and view the facts in the light most favorable to the nonmoving party. <u>See Evans v. Technologies Applications & Service Co.</u>, 80 F.3d 954, 958 (4th Cir. 1996). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party discharges its burden by "`showing' ... that there is an absence of evidence to support the nonmoving party's case," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986), the nonmoving party then "must come forward with `specific facts showing that there is a <u>genuine issue for trial</u>.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original). Summary judgment will be granted unless a "fair-minded jury could return a verdict for the [nonmoving party] on evidence presented." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 252 (1986); <u>see also Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993) (noting that "court can determine that trial is unnecessary only if facts are undisputed, or ... the dispute is of no consequence to the dispositive question").

Thus, to evaluate the appropriateness of summary judgment, the Court must evaluate the elements of Appellant's Title IX, Title VI, § 1981, and § 1983 claims. Such claims are appropriately analyzed under the Title VII proof scheme, first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See Preston v. Virginia ex rel New River Comm. College</u>, 31 F.3d 203, 207, 208 (4th Cir.

_____

tory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

1994) (holding that Title IX discrimination claim should be interpreted in accordance with principles governing Title VII); Georgia State Conference of Branches of NAACP v. State of Georgia, 775 F.2d 1403, 1417 (11th Cir. 1985) (applying Title VII disparate treatment framework to Title VI case);**6** Gairola v. Virginia Dept. of Gen. Serv., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."). Under McDonnell Douglas, the plaintiff has the initial burden of demonstrating a prima facie case of discrimination, which establishes a presumption of unlawful discrimination. 411 U.S. at 802. If the plaintiff establishes a prima facie case, the court must rule in favor of the plaintiff unless the defendant provides a legitimate, non-discriminatory reason for the adverse action. See McDonnell Douglas, 411 U.S. at 802-05; see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). If the defendant provides such an explanation, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the proffered reason is a pretext to mask unlawful discrimination. See McDonnell Douglas, 411 U.S. at 802-805; see also Mitchell, 12 F.3d at 1315.

Under McDonnell Douglas, Middlebrooks can establish a prima facie case by demonstrating that she (1) is a member of a protected class; (2) was qualified for participation in the Program; and (3) was dismissed from the Program despite her qualifications. 411 U.S. at 802. Defendants acknowledge that Plaintiff belongs to a protected class and was, indeed, terminated from the Ph.D. Program. They insist, however, that she is not qualified to remain a Ph.D. candidate. The University requires that its Ph.D. candidates in the Math Department pass two qualifying examinations before the end of their third year in the Program; after ten attempts, Middlebrooks passed no qualifying examination.

Appellant insists that she failed her qualifying examinations because of the acts of racial and gender discrimination perpetrated by Defendants. As proof, she presents primarily conclusory statements and unsupported allegations that certain, named individuals at the

_____

**6 See also New York Urban League, Inc. v. State of New York**, 71 F.3d 1031, 1036 (2nd Cir. 1995) (applying Title VII test to Title VI case); City of Chicago v. Lindley, 66 F.3d 819, 830 (7th Cir. 1985) (same).

8

University "had a reputation" of discriminating against African-American students. In addition, Middlebrooks complains of various incidents, including Professor Schafer's resistance to her admission into his class and undesirable testing conditions for at least one of her qualifying exams. Appellant posits that the offensive character and the cumulative effect of her alleged mistreatment raises a strong inference of discriminatory intent. Appellant does not, however, demonstrate that Professor Schafer's conduct is in any way connected to the administration of the qualifying exams or her poor performance; nor does she proffer any evidence that proves that she is, in fact, qualified to continue as a Ph.D. candidate. She does not suggest that she had mastered the material on which she was tested; nor does she offer testimony from others to that effect. See generally Gairola, 753 F.2d at 1287 ("... the burden is on the plaintiff to establish that she was ... qualified ...."). So, even though Plaintiff's burden of establishing a prima facie case of discrimination is not intended to be onerous, see Evans, 80 F.3d at 960, Appellant fails to establish the minimal but necessary requirements.

Even if Plaintiff had established a prima facie case, she still must demonstrate that the University's explanation that she was terminated for failing her qualifying exams is mere pretext and that she was actually terminated because of her race or gender. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992). We believe that Plaintiff also has failed to satisfy this essential requirement.

Plaintiff has charged that three of the ten examinations she took in an attempt to satisfy the Program's qualifying requirements were administered unfairly. For her Operations Research exam, administered August 1994, Middlebrooks claims that she did not receive credit for two problems that she answered correctly. Given Plaintiff's overall poor performance, however, even if she had received credit, it is not clear that she would have passed the exam.

For a second exam, Zoology, Plaintiff asserts that she was forced to take it in an office where she was distracted by constant traffic and ongoing conversations. In addition, she maintains that another student was given a different test and was allowed to take it under more favorable conditions. In testimony, a University administrator con-

9

ceded that the venue, i.e. a busy office, was inappropriate for a qualifying exam. The administrator further admitted that it was "unusual that different students would be given such different exams." While Plaintiff portrays highly unusual and inappropriate testing conditions, she does not demonstrate that they were <u>because of</u> her race or gender, as the relevant statutory and case law dictates. <u>See generally</u> <u>Hicks</u>, 509 U.S. at 511 (noting, in a Title VII case, that the ultimate question is "whether plaintiff has proven `that defendant intentionally discriminated against [him]' <u>because of</u> his race") (emphasis added).

Finally, Plaintiff again took the Operations Research exam in August 1995 and failed. An error appeared in one problem on the exam, causing students to spend an excessive amount of time on it. Middlebrooks requested an opportunity to re-take the exam but was refused. Since all students were given the same exam, with the same error, and presumably no other student was given an opportunity to re-take the exam, it does not seem unreasonable or unfair that Middlebrooks was not allowed to do so. More importantly, Plaintiff again presents no evidence that indicates that she was denied the chance to re-take the test <u>because of</u> her race or gender.

Viewing the evidence in the light most favorable to Appellant, there is no evidentiary basis to rebut Defendants' legitimate, nondiscriminatory reason for dismissing her from the Program. So, even if we determined that Plaintiff established a prima facie case, which is doubtful under the facts contained in the record, she fails to prove that Defendants' explanation is pretextual.

III.

We, therefore, conclude that the district court's grant of summary judgment is appropriate. Accordingly, we affirm.

<u>AFFIRMED</u>

10